Joseph M. Conroy, J.
This consolidated action involves a dispute between two insurance companies as to the coverage of their respective policies of insurance.
On August 22, 1952 one Ralph Marigliano was injured at a housing project which was being constructed under the supervision of Efroy Construction Corporation as general contractor. The excavation work was being done by Frens Construction Co., a subcontractor. Marigliano rented his truck and his own services to Frens. While walking on the job site awaiting the loading of his truck, Marigliano was injured when a large rock fell from a truck owned by D ’Aquilla Brothers Contracting Company and driven by one of its employees. The truck had been loaded by a crane engaged in the work of Frens.
Marigliano subsequently recovered a judgment for $50,000 in the Supreme Court, Kings County, against Efroy, Frens and D’Aquilla. The judgment was satisfied by the payment of $15,000 by Efroy and $35,000 by D ’Aquilla. Frens paid nothing.
D ’Aquilla thereafter secured a judgment in contribution against Frens for $16,916.65, its prorata share of Marigliano’s judgment. Execution upon the judgment in contribution was returned unsatisfied. Demand was made upon Frens ’ insurance carrier, Hartford Accident and Indemnity Company, for payment of the judgment in contribution, but this demand was refused. D ’Aquilla then brought an action in the Supreme Court, Queens County, against Hartford, pursuant to section 167 of the Insurance Law. Hartford commenced an action in the Supreme Court, New York County, against D’Aquilla and its insurance carrier, Liberty Mutual Insurance Company, for a declaratory judgment. The two actions have been consolidated here.
Liberty’s policy covering D’Aquilla was an “Automobile Policy” covering D’Aquilla’s liability for its trucks, including the one from which the rock fell on Marigliano. Hartford’s policy covering Frens was a “ Manufacturers’ and Contractors'’ Schedule Liability Policy ” covering Frens’ liability for operations at certain premises. The problem presented by this con *735 solidated action is which of these policies should cover Frens ’ liability to Marigliano and, therefore, D’Aquilla’s judgment in contribution.
Liberty’s policy defined the word “ insured ” to include the named insured and any person using an automobile owned or hired by the insured, provided such use was with the permission of the insured. Where similar policies have specifically defined the word “use” to include loading and unloading, the courts have uniformly held that the person loading the automobile is an additional insured under the automobile policy. (See Wagman v. American Fid. & Cas. Co., 304 N. Y. 490; cf. Macy & Co. v. General Acc. Assur. Corp., 4 Misc 2d 89.)
The instant policy does not define the word “ use ”. Therefore, while it does not specifically include loading and unloading as an authorized use, neither does it specifically exclude loading and unloading as an authorized use. This court finds that such activities are a proper use of the vehicle and that Frens, therefore, was covered by Liberty’s policy as an additional insured.
The next question presented is whether Frens ’ liability to Marigliano was also covered by Hartford’s policy. Said policy covered Frens ’ liability with respect to the 1‘ ownership, maintenance or use ■ of premises, and all operations necessary or incidental thereto.” (Definition of Hazards, div. 1.)
In its pleadings herein, Hartford virtually concedes that its policy would cover Frens unless such liability is excluded under subdivision (a) (1) of Exclusions, or unless Frens breached the contract of insurance by its failure to comply with condition 9 of the policy.
Condition 9 of Hartford’s policy provides: “If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.”
That Hartford had some knowledge of Marigliano’s lawsuit cannot be denied. Marigliano’s action against Frens was commenced by the service of a summons on October 13,1953. Frens ’ present attorneys appeared in the action and the complaint was served on them on November 27,1953. A copy of the complaint was apparently sent to Hartford by Marigliano’s attorney on or about December 17, 1953. Hartford, after examining the complaint, wrote to Paltrow & Jensen, Esqs., attorneys for Frens, on December 22, 1953, advising them that on the basis of the allegations set forth in said complaint, “there is no coverage for the accident under the terms of policy number, MCS 29993, bv reason of Exclusion 2(i) of the policy ”. It is conceded that *736 “Exclusion 2(i) ” was an error and that Hartford is relying upon Exclusion (a) (1) to justify its disclaimer of liability.
In view of Hartford’s specification of the exclusion as the ground for its disclaimer and its failure to mention Condition 9 in its letter to Frens’ attorneys, it must be deemed to have waived any defense based on breach of condition 9. While the complaint may not have been forwarded by Frens, Hartford did receive a copy of it and it based its rejection of liability solely on the exclusion clause. When an insurer denies coverage on a specific ground, it is estopped from later asserting other grounds, not previously specified, for denying coverage. (See 16 Appleman, Insurance Law and Practice, § 9260, pp. 837-840.) It follows that Hartford is not relieved of its obligation by any alleged breach of condition 9 of the policy.
Exclusion (a) (1) so far as here pertinent provides that the policy does not apply “ to the ownership, maintenance or use, including the loading or unloading, of automobiles while away from premises owned, rented or controlled by the Named Insured or the ways immediately adjoining.”
Hartford contends that Frens did not have control of the premises, but that such control resided in Efroy, the general contractor. Frens ’ contract with Efroy called foy the excavating work for 816 units of garden apartments and for the grading of driveways, courts and walks. The entire building project covered an area of about 10 city blocks. The different buildings were in various stages of construction and the area in which Frens was operating at the time of the accident was “ the size of the court-room.” Hartford argues that the “premises” were the entire project and that Efroy, not Frens, had control of it.
While the word “ control ” in the abstract may mean possession to the exclusion of everyone else, we are not concerned with what the word means in the abstract, but how it was understood by the parties to this contract of insurance. The “ schedule ” attached to the policy states that the hazards insured were:
‘1 EXCAVATION FOR CELLARS OR FOUNDATIONS OF BUILDINGS, BRIDGES OR RETAINING WALLS SOLID MASS ROCK EXCAVATION IN CONNECTION WITH DAMS (EXCAVATION IN CONNECTION WITH STREET OR ROAD CONSTRUCTION OR TUNNELING TO BE SEPARATELY RATED)
‘ ‘ CONCRETE CONSTRUCTION N. O. C. INCLUDING FOUNDATIONS MAKING SETTING UP OR TAKING DOWN FORMS, SCAFFOLDS, FALSEWORK OR CONCRETE (EXCAVATION, PILE DRIVING AND ALL WORK IN SEWERS TUNNELS, SUBWAYS, CAISSONS OR COFFER DAMS TO BE SEPARATELY rated) * *
*737 Obviously, such work would very often be performed on premises not owned or rented by the insured. The parties must have intended the word “control” to mean such control as would enable the insured to do its work. In other words, “ control ” as used in this policy meant not necessarily exclusive possession, but such measure of control, jointly with others, as was consonant with the work to be done. Otherwise, Hartford’s policy would be practically meaningless. It is elementary that any ambiguity in the policy must be resolved against Hartford.
The exclusion of the ownership or use of automobiles, including loading and unloading thereof while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining, presumably meant that once the trucks left the premises where the work was being done or the ways immediately adjoining, Hartford’s policy did not cover them. In other words, the policy did not cover the entire trip to a dumping ground.
In the instant case, the trial court found that the rock fell on Marigliano when the truck “ had proceeded some distance from the place of loading on its way to the public highway which it had not yet reached ’ ’. Certainly until the truck reached the public highway, it must be said to be on “ the ways immediately adjoining” and the policy must be deemed to have covered the loading of trucks at the building site. It follows that Frens’ liability to Marigliano was covered by Hartford’s policy, as well as by Liberty’s.
It does not necessarily follow, however, that both companies must share the loss proportionately in accordance with the “ other insurance ” clause which each policy contains. While Frens is covered by both policies, its employee, who was actually operating the crane, is not so covered for only Liberty’s automobile policy covers said employee as an additional insured. Where a master has been held liable for the fault of a servant, the servant is under an obligation to reimburse the master. (Opper v. Tripp Lake Estates, 274 App. Div. 422, affd. 300 N. Y. 572; Smart v. Morard, 124 N. Y. S. 2d 634.) In other words, Frens has the right to recoup against its servant who operated the crane. Liberty alone insured said employee and, therefore, Liberty alone must bear the loss of D’Aquilla’s judgment in contribution for Frens’ prorata share of Marigliano’s judgment. (Canadian Ind. Co. v. United States F. & G. Co., 213 F. 2d 658; Pacific Employers Ins. Co. v. Hartford Acc. & Ind. Co., 228 F. 2d 365, cert. denied 352 U. S. 826.)
In the Pacific Employers case (supra) the court held that the insurer providing extended coverage is ultimately liable as *738 against an insurer providing coverage only to a named insured where the named insured’s liability is vicarious and he has a right of recovery over against the person primarily liable. The insurer of the ultimately liable tort-feasor must bear the loss. The court further held that in an action for a declaratory judgment, the court may settle all issues without forcing the parties to proceed separately against those who may be liable.
Accordingly, judgment is granted in favor of Hartford dismissing D’Aquilla’s complaint, and in its favor in the action for a declaratory judgment. Settle judgment on notice.