Argued July 12, reversed and remanded September 10, 1971

# FIREMAN'S FUND AMERICAN INSURANCE COMPANIES, *Appellant, v.* TURNER, *Respondent.*

488 P2d 429

*William L. Hallmark,* Portland, argued the cause for appellant. With him on the brief were C. Anderson Griffith and McMenamin, Jones, Joseph & Lang, Portland.

*Duane Vergeer,* Portland, argued the cause for respondent. With him on the brief were Vergeer, Samuels, Roehr & Sweek, Portland.

Before O'CONNELL, Chief Justice, and MCALLISTER, HOLMAN, TONGUE and HOWELL, Justices.

TONGUE, J.

This is an action for indemnity brought by the insurer of an employer against an employee. The purpose of the action is to recover from insurer of the

employee the defense costs and amount paid by the insurer of the employer in satisfaction of a judgment against both employer and employee in favor of a third party injured by an automobile owned by the employee and negligently driven by him in the course of his employment. Plaintiff appeals from a judgment in favor of defendant as entered by the court, sitting without a jury.

All of the issues presented for decision have not been previously decided by this court. They are:

(1) Whether an employer who is held vicariously liable to a third person injured by the negligence of an employee (and without negligence on the part of the employer), may seek indemnity against the employee;

(2) Whether in such a case it violates public policy for the employer's insurer to be subrogated to the employer's cause of action for indemnity; and

(3) Whether the *Lamb-Weston* doctrine of contribution between insurers is applicable in such a case.

Plaintiff issued to Oregon Sign & Neon Corporation (Oregon Sign) a policy of liability insurance with limits for personal injury in the sum of $100,000. That policy covered Oregon Sign against liability arising from the operation of vehicles owned by certain employees, including defendant, but did not cover the employees against liability. The policy also contained a subrogation clause in general form, under which plaintiff, as the insurer, was subrogated to the rights of Oregon Sign in the event that plaintiff, as its insurer, made payments under the terms of the policy.

Defendant was the manager of Oregon Sign and carried his own liability insurance under a policy with

limits of $10,000 for injury to one person. He was paid a monthly "car allowance" by Oregon Sign for expenses incurred in the operation of his car for business purposes.[1]

While operating his automobile in the course of his employer's business defendant rear-ended another automobile. The party injured in that accident brought an action for personal injuries and recovered judgment in the sum of $9,177.23 and $75 in costs against both Oregon Sign and defendant, based solely upon negligent driving by defendant. The recovery against Oregon Sign was based solely on the doctrine of respondeat superior, without claim of negligence by it as employer.

Plaintiff insurer paid $7,401.76 in satisfaction of that judgment (or 10/11ths of that judgment), and expended an additional $1,186 in defending the action. Defendant's insurer contributed the balance (or 1/11th), in satisfaction of that same judgment.

The trial court made the following additional finding of fact:

> "That the negligence of Robert S. Turner was established at the trial of the cause, and that the Court having heard evidence on the nature of the accident and the conduct of the defendant at the time of said accident finds that the accident resulted from inadvertance [sic] and a mistake of judgment on the part of Robert S. Turner, but that Robert S. Turner at the time of the accident was rendering good and faithful service to his employer."

---

[1] While it might be inferred that it was intended that the expenses to be paid by this monthly "car allowance" were to include the expense of carrying liability insurance, there was no evidence of any express understanding to that effect.

The trial court also made the following conclusions of law:[2]

"That no recovery may be had by an employer against an employee even though such employee is guilty of negligence constituting a mere inadvertance [sic] or mistake where the employee is at the time complained of rendering good and faithful service to his employer.

"That plaintiff's action may not be maintained because it is against public policy to permit subrogation of a personal injury award.

"That each carrier having discharged its prorata share of the judgment, and each having received a premium therefor no recovery can be had by the one against the other."

1. *An employer held vicariously liable to a third person injured by the negligence of an employee, without negligence on the part of the employer, may seek indemnity against the employee.*

Plaintiff, as appellant, contends that it has long been recognized at common law and by most courts, including this court, that an employer held vicariously liable to a third person injured by the negligence of an employee, without negligence on the part of the employer, may seek indemnity against the employee.[3]

---

[2] For the purposes of this opinion these conclusions of law are set forth in the order of the issues as stated above, rather than in the order as stated by the trial court.

[3] Cases and authorities cited by plaintiff and supporting this proposition include the following:

General Insurance Company v. P. S. Lord, 92 Adv Sh 511, 512, 258 Or 332, 482 P2d 709 (1971); Allstate Insur. Co. v. Lumbermen's Mutual Casualty Co., 204 F Supp 83, 87 (D Conn 1962); American Auto Ins. Co. v. Indemnity Ins. Co. of North America, 108 F Supp 221 (1952); Canadian Indemnity Co. v. United States Fidelity & Guaranty Co., 213 F2d 658 (9th Cir 1954); Dennler v. Dodge Transfer Corp., 201 F Supp 431, 439 (D Conn 1962); Pacific Employer's Insurance Co. v. Hartford

a. *It is not contrary to public policy for an employer to seek indemnity against an employee.*

■ Defendant, while recognizing the authorities cited by plaintiff, contends that "considerations of public policy \* \* \* [are] of greater importance than recognition of an out-dated rule of law exercised without regard to its effect." Thus, defendant contends that Oregon Sign, as an employer, knew that it was inevitable that defendant in driving from 24,000 to 36,000 miles each year would have an accident; that defendant obtained insurance coverage to protect it against such accidents and that where, as in this case, there was no drinking or gross negligence, but no more than "mere inadvertent negligence which was within the contemplation of the parties," the employer should not, as a matter of public policy, be entitled to "pass the economic loss off on to the employee when it is foreseeable at the outset."

We may agree that this contention may have considerable merit as a matter of abstract justice, de-

Accident & Indemnity Co., 228 F2d 365 (9th Cir 1955); Thomas v. Malco Refineries, 214 F2d 884 (10th Cir 1954); Transport Indemnity Co. v. American Fidelity & Casualty Co., 4 Cal App 3d 950, 84 Cal Rptr 856, 860 (1970); Continental Casualty Co. v. Phoenix Construction Co., 46 Cal 2d 423, 296 P2d 801, 57 ALR2d 914 (1956); Fenly v. Revell, 170 Kan 705, 228 P2d 905 (1951); Bituminous Casualty Corp. v. American Fidelity and Casualty Co., 22 Ill App 2d 26, 159 NE2d 7 (1959); Grand Trunk Ry. v. Latham, 63 Me 177 (1874); D'Aquilla Bros. Con. Co. v. Hartford Acc. & Indem. Co., 22 Misc 2d 733, 193 NYS2d 502 (1959); Standard Surety & Casualty Co. v. Metropolitan Casualty Co., 67 NE2d 634, 635 (Ohio App 1945); Ohio Casualty Insur. Co. v. Capolino, 65 NE2d 287, 289 (Ohio App 1945); Muldowney v. Middleman, 176 Penn Super 75, 107 A2d 173 (Penn 1954).

See also Restatement (Second) Agency (1958) § 401, comment d; Restatement, Restitution (1937) § 96, comment a; 2 Larson, Workmen's Compensation Law (1970) § 71.10; Prosser, Torts (4th ed) 311, § 51.

pending upon the circumstances of the particular case. Indeed, the common law rule of indemnity by an employer against his employees has been strongly criticized for much the same reasons.[④] Defendant has cited no cases, however, in which the courts have undertaken to abolish that rule by judicial decision, and perhaps for good reason.

The "fault concept"—that all persons should be held responsible for the consequences of their wrongful acts, including "inadvertent negligence,"—while subject to criticism, is still firmly established as the foundation of tort liability. Exceptions to and modifications of that rule, such as the requirement of gross negligence, rather than simple negligence, as the basis for liability of the driver of an automobile to a guest passenger, have usually been adopted as the result of statute, rather than court decision. And while the legislatures, rather than the courts, are ordinarily considered to have the primary responsibility for changes in the law for reasons of public policy, legislation which undertakes to relieve persons from responsibility for their wrongful acts is also usually subject to strong criticism. (Witness the current controversy over proposals for "no-fault" insurance legislation.)

It has been contended that to permit employers to seek such indemnity against their employees would "thwart efficient loss distribution in pursuit of perfecting the fault principle" and that "if this doctrine were carried to its logical conclusion most of our acci-

---

[④] See Steffan, The Employer's "Indemnity" Action, 25 U Chi L Rev 465, 489-494 (1958); James, Indemnity, Subrogation, and Contribution and the Efficient Distribution of Accident Losses, 21 NACCA LJ 360, 362, 368-370, 374 (1958). See also Prosser, *supra* note 3, at 313.

dent loss would ultimately be paid for by the operators of machines or other workmen."[5]

In considering this contention, however, it must be kept in mind that, as a practical matter, few employers seek to exercise such a right of indemnity against their individual employees, and for three good reasons: (a) the adverse effect upon employee morale; (b) the inability of most employees to pay such indemnity, and (c) the opposition of unions.[6] And while in cases involving automobile accidents the insurers of employers may not be inhibited by these considerations, most employees today also carry automobile liability insurance, as in this case. In addition, in this case, defendant was paid a monthly "car allowance" to cover the cost of expenses incurred in the operation of his car for business purposes.[7] This, of course, raises the problem of the exercise by the insurer of an employer of its rights of subrogation and the problem of whether the insurance companies for both employer and employee should contribute to the loss in a case such as this, as considered separately below.[8]

It must also be kept in mind that the rule of vicarious liability of employers, although a court-made rule, is a rule under which persons injured by the wrongful acts of employees may seek recovery against the employer as the one best able to pay and to dis-

[5] See James, *supra* note 4, at pp 369-370. See also Steffan, *supra* note 4, at 489-490.

[6] See Note: Government Recovery of Indemnity from Negligent Employees: A New Federal Policy, 63 YLJ 570 (1954).

[7] See also suggestions that employers should provide insurance coverage for employees or that union contracts include provision excluding employer's right of indemnity. James, *supra* note 4, at 372 and Jolowicz, The Right to Indemnity Between Master and Servant, 1956 Camb LJ 101, 110.

[8] See discussion below.

tribute the resulting loss—all in the absence of any negligence or "fault" on part of the employer. Thus, it is contended, and with some merit, that if such liability without fault is imposed on the employer, it is not contrary to public policy to permit him to seek indemnity against the person at fault, despite the fact that such person may be his employee.[9]

In any event, it is our view that the right of an employer held vicariously liable to a third person injured by the wrongful act of an employee to seek indemnity against the employee is too well established to be abolished at this time by decision of this court as contrary to public policy, at least under the facts and circumstances of this case.

b. *Application of rule to acts of ordinary negligence by employees.*

■ Defendant next contends that even assuming such a right of indemnity, the basis for such a right is the employment contract, with the servant's act being a breach of an implied condition of that contract,[10] and that the extent of the duty of the employee under his contract of employment is "to render faithful service to the employer."[11] Thus, it is contended that the employee should not be held liable to the employer for "mere inadvertent negligence," or "mistake of judgment," so long as he was "rendering good and faithful service to his employer," as found by the trial court

---

[9] See Jolowicz, *supra* note 7, at 106–110. But see James, *supra* note 4, at 368–370. See also Larson, *supra* note 3, at 166 n.1, and Prosser, *supra* note 3, at 313.

[10] Citing 53 Am Jur 2d 177, 178, Master & Servant § 108.

[11] Citing Kowaleski v. Kowaleski, 227 Or 45, 60, 361 P2d 64 (1961), and Schubert v. August Schubert Wagon Co., 249 NY 253, 164 NE 42, 43 (1928).

in this case. Defendant also contends that "this modern view is accepted in the cases interpreting the Federal Tort Claims Act where indemnity against the negligent employee by the United States is not permitted.[19]

Although many of the authorities speak of the basis for the employer's right of indemnity in terms of a breach by the employee of an implied condition of his employment contract, most authorities recognize a much broader basis for that right, to the effect that any person who, without fault, becomes liable for the wrongful conduct of another is entitled to indemnity against the other[20] and that this extends to all wrongful conduct, including ordinary negligence ("mere inadvertence" or "mistake of judgment").[21]

Indeed, in the recent case of *General Insurance Co. v. P. S. Lord,* 258 Or 332, 482 P2d 709 (1971), we said that:

> "* * * A party held responsible by reason of his vicarious liability for the *negligence* of another, such as a servant or independent contractor, can recover indemnity from the servant or independent contractor. * * *." (Emphasis added)

To the same effect, this court, in *Kennedy et al v. Colt,* 216 Or 647, at 654, 339 P2d 450 (1959), quoted with approval from an earlier decision as follows:

> "* * * one constructively liable for a tort is generally held entitled to indemnity from the actual wrongdoer, regardless of whether liability is imposed on the person seeking indemnity by statute or by rule of the common law, and irrespective of the existence of an express contract to indemnify."

[19] Citing United States v. Gilman, 347 US 507, 74 S Ct 695, 98 L Ed 898 (1954).

[20] Restatement, Restitution (1937) § 96; 2 Larson, Workmen's Compensation Law (1970) § 71.10.

[21] Restatement (Second) Agency § 401, comments a and d.

See also *U. S. Fid. & Guar. Co. v. Thomlinson Co.*, 172 Or 307, 329, 141 P2d 817 (1943).

It is true that in *Kowaleski v. Kowaleski*, 227 Or 45, 60, 361 P2d 64 (1961), in an opinion by Mr. Justice ROSSMAN, it was stated (at p 60) by way of dictum, that "The right to recover from the employee is based upon the employee's independent duty to render faithful service to the employer," citing *Schubert v. August Schubert Wagon Co.*, 249 NY 253, 164 NE 42 (1939). The question whether the right of indemnity is based on tort or on implied contract, as well as the further question whether, in either event, that right would extend to liability based upon acts of ordinary negligence (including "inadvertence" and "mistake") were not in issue in either *Kowaleski* or *Schubert* and neither case undertook to decide those questions, even by dictum.[⑨] In any event, the duty of an agent or employee is usually considered to include not only a duty to render "faithful" service, but also a duty to exercise reasonable care in the performance of his duties.[⑩]

As for defendant's reliance upon *United States v. Gilman*, 347 US 507, 74 S Ct 695, 98 L ed 898 (1954), the Supreme Court of the United States held only in that case (at pp 511-513), in considering the question whether under the Federal Tort Claims Act the United States has a right of indemnity against

---

[⑨] The issue presented for decision in both *Kowaleski* and *Schubert* was whether a wife injured by the negligence of her husband while acting within the scope of his employment could recover judgment against his employer on the theory of *respondeat superior*. In holding the employer liable in such a case this court said in *Kowaleski* that "whether the employer will sue the employee [husband] is collateral to this case and is not before the court."

[⑩] Prauss v. Adamski, 195 Or 1, 11, 244 P2d 598 (1952); Restatement (Second) Agency § 401, comments a and d.

an employee whose negligence results in injury to a third-party claimant against the government, that:

> "It [that question] presents questions of policy on which Congress has not spoken. The selection of that policy which is most advantageous to the whole involves a host of considerations that must be weighed and appraised. That function is more appropriately for those who write the laws, rather than for those who interpret them."[17]

Accordingly, and whether the right of an employer to seek indemnity from an employee is to be considered as a right based upon tort or upon implied contract, we hold, in accordance with what we believe to be the weight of authority, as well as our previous decisions, that such a right includes the right to seek indemnity from liability resulting from any and all "wrongful acts" by employees, including ordinary negligence.[18]

■ *Subrogation to an insurance company of the right of the insured to indemnity in such a case is not against public policy.*

■ Plaintiff assigns as error the following conclusion of law by the trial court:

> "That plaintiff's action may not be maintained because it is against public policy to permit subrogation of a personal injury award."

In support of that contention plaintiff cites *Geertz v. State Farm Fire and Casualty Co.,* 253 Or 307, 451 P2d 860 (1969). In that case we held, at 310:

> "Whatever reasons there may be for prohibiting the assignment of personal injury claims after an

---

[17] See also Note, 63 YLJ, *supra* note 6, at 577; Steffan, *supra* note 4, at 491; and James, *supra* note 4, at 370-71.

[18] We do not decide in this case whether Or Laws 1971, ch 665, providing for contribution among joint tortfeasors has any effect upon the employer's right of indemnity. See Thomas v. Malco Refineries, Inc., 214 F2d 884, 886 (10th Cir 1954).

accident, we do not think they apply to a situation where the claim is transferred pursuant to an indemnity contract between insurer and insured. If there are evils that flow from such contracts, we are not aware of them. We recognize that some courts have held that the rule of nonassignability of personal injury claims renders subrogation clauses invalid. However, the better reasoned cases are to the contrary and we adopt them."

It is true that *Geertz* involved different facts. We may also share the concern of the trial judge over the possible consequences of such a practice by insurance companies. Nevertheless, we feel constrained by our recent decision in *Geertz* to hold that an agreement between the employer and his insurer under which the insurer is subrogated to the employer's right of indemnity is enforceable and is not invalid as against public policy.

Indeed, defendant has stated in his brief that:

"The crux of this argument is not that the insurance carrier should not be subrogated, in a proper claim, but that a carrier should not, in the name of subrogation, be allowed to instigate actions which public policy or the law would prohibit to the insured."

Therefore, in view of our holding that public policy does not prohibit an employer under the facts of this case from seeking indemnity from the employee whose negligence resulted in a judgment against his employer, it follows that the insurer of such an employer, after paying that judgment, may be subrogated to the same claim, in accordance with the terms of the insurance contract.

■ 3. *Lamb-Weston does not apply in this case.*

Defendant's final contention is that under the rule adopted by this court in *Lamb-Weston, Inc. et al*

*v. Oregon Automobile Ins. Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643 (1959), the insurers for both plaintiff and his employer, having paid the judgment against both of them on a pro-rata basis, should abide by that result rather than to permit one carrier to recoup its losses from the other.

In support of that contention defendant relies upon a decision by the United States District Court for the District of Oregon in *Fireman's Fund Ins. Co. v. Western Pacific Ins. Co.,* Civil No. 67-88 (D Or Jan. 23, 1968). In that case, plaintiff insurance company covered a fire protection district, but not its employees. Defendant insurance company covered a volunteer fireman and also the district for its responsibility for that fireman's act while driving his own vehicle. An action was brought against the district and the fireman and a settlement was made by the carrier for the district, which was agreed to be a reasonable settlement. Both carriers were required by their policies to defend the case. Plaintiff carrier then urged that it should be held to provide only excess coverage since it covered only the employer. The court, after considering *Lamb-Weston,* held that this was an attempt to reinstate the doctrine of "primary" and "secondary" liability, which had been rejected in Oregon. Under these facts, the court required both carriers to prorate the settlement according to their respective policy limits.

In *Lamb-Weston* it was held that where two insurers insure a person liable for damages, they will be required to prorate the damage award if the "other insurance" clauses of the two policies are repugnant. In order for such a rule to apply, however, it must be alleged and proved that each insurer provide coverage

for the person liable. *Fireman's Ins. Co. v. Motors Ins. Corp.*, 245 Or 601, 423 P2d 754 (1967); *Canadian Indemnity Co. v. United States Fidelity and Guaranty Co.*, 213 F2d 658 (9th Cir 1954). On the other hand, if the two policies do not cover the same insured, there can be no repugnancy with respect to the "other insurance" clauses.

In this case, however, plaintiff's policy shows by its terms that defendant was not insured under that policy when driving a vehicle which was not owned by his employer, the plaintiff's insured. Indeed, the court found as fact that defendant was not insured under plaintiff's policy. It follows, regardless of that decision by the United States District Court, that the *Lamb-Weston* rule has no application in this case and that plaintiff is entitled to seek full indemnity from defendant.

In so holding, we recognize the possible equities and practical advantages of a uniform rule for the prorating the loss in all such cases. In our view, however, to extend the rule of *Lamb-Weston* to this case would do violence to the terms of the insurance policies involved, upon which insurance companies are entitled to rely in actions between themselves, unless the terms of such policies are either invalid or unless they are repugnant, as in *Lamb-Weston,* but not in this case.[19]

---

[19] Cf Transport Indemnity Co. v. American Fidelity & Casualty Co., 4 Cal App 3d 950, 84 Cal Rptr 856, 860 (1970); Pacific Employers Ins. Co. v. Hartford Acc. & Ind. Co., 228 F2d 365, 373 (9th Cir 1955); D'Aquilla Bros. Con. Co. v. Hartford Acc. & Indem. Co., 193 NYS2d 502, 507 (1959); and Canadian Indemnity Co. v. United States Fidelity & Guar. Co., 213 F2d 658, 659 (9th Cir 1954).

See also Fenly v. Revell, 170 Kan 705, 228 P2d 905, 910 (1951), holding that the fact of voluntary payment does not negative the right to indemnity, but only varies the degree of proof required.

For all of these reasons, the judgment of the trial court must be reversed and the case remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.