542 A.2d 421

**Bebe HANSCOME t/a Bebe Hanscome Interiors**

v.

**Marvin J. PERRY, et al.**

No. 1621, Sept. Term, 1987.

Court of Special Appeals of Maryland.

June 14, 1988.

David Townes Dawson, Temple Hills, for appellant.

Michael P. Chervenak (Ford & O'Neill, on the brief), Rockville, for appellee, Marvin J. Perry and Associates, Inc.

No brief or appearance by appellee Qubic.

Argued before GILBERT, C.J., WILNER, J., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired) Specially Assigned.

WILNER, Judge.

Appellant is an interior decorator. On July 20, 1979, she and one of her customers, Peggy Holmes, went to the showroom of Marvin J. Perry, Inc., where they saw a plexiglass console that Mrs. Holmes liked. Because Mrs.

Holmes was planning to move to Utah shortly, she wanted to purchase the floor sample rather than order a new console from the manufacturer.

At appellant's urging, Perry agreed to sell the floor sample. An invoice was prepared showing a sale to *appellant* for a net price of $720 ($1,200 list price less a $480 discount); appellant gave Perry a deposit of $240 and paid the balance of $480 three days later. Appellant immediately resold the piece to Mrs. Holmes for $1,000.

Perry was reluctant to sell the floor sample and agreed to do so only upon the assurance that Mrs. Holmes would remove the item promptly. Mrs. Holmes agreed to that condition, intending at the time to transport it herself, in a trailer, to Utah. She apparently changed her mind, however, and asked that the item be shipped to Utah. Just how this was arranged is not altogether clear. At one point, appellant testified that Mrs. Holmes made the arrangement directly with Perry, that she (appellant) knew nothing about it until the item was in fact delivered in Utah, and that she had no further agreement with Perry regarding delivery. At another point in her testimony, appellant said something quite different—that Mr. and Mrs. Holmes informed her on the day of their departure that they would be unable to take the item with them, that they had already informed Perry that they would not be taking it, and that appellant would have to make arrangements with Perry to have it shipped. In this second version, appellant said that she asked Perry to "have it crated and shipped, and they sent me a bill for the crating of it." Whatever may have been her role in the arrangement, Perry did send appellant a bill for $35 for the crating and she paid that bill.

Other evidence indicates that the manufacturer, Qubic, Inc., actually crated the item and employed Consolidated Freightways, Inc. to ship it to Utah. Consolidated delivered the piece to the Holmeses on August 17, 1979; when it was uncrated, the Holmeses discovered that it was damaged.

Mr. and Mrs. Holmes made a claim against everyone—appellant, Perry, Qubic, and Consolidated—all of whom eventually denied responsibility. At some point—exactly when is not clear—the Holmeses sued appellant in the Circuit Court of Fairfax County, Virginia, seeking recovery not only for the damage done to the console but for damage done to two other pieces of furniture as well. On February 11, 1983, following a jury trial, the Virginia court entered judgment against appellant in the amount of $11,046, of which $2,272 was for the console ($1,600 in compensatory damage and $672 in pre-judgment interest). Appellant paid the $2,272 part of the judgment in March, 1983.

On April 26, 1983—a month after payment of the Virginia judgment and three years and eight months after the console was delivered to the Holmeses in Utah—appellant filed suit in the Circuit Court for Montgomery County against Perry and two of its employees, Qubic and one of its agents, and Consolidated. In that action, appellant alleged that (1) on July 20, 1979, she contracted with Perry for the sale of the console, (2) Perry contracted with Qubic who, in turn, contracted with Consolidated to ship the item to the Holmeses, (3) the item was delivered to the Holmeses in damaged condition on August 17, 1979, (4) the Holmeses recovered a judgment against appellant for $2,272, which she paid, (5) Perry, Qubic, and Consolidated "were responsible for the shipment of the console and were negligent in delivering it," and (6) "because of the Defendants [sic] negligence in handling the console the Plaintiff has suffered damage."

The court disposed of that action on summary judgment, finding no basis for liability against the individual defendants and concluding that the action against the corporate defendants, sounding in negligence, was time-barred by the three-year statute of limitations set forth in Md. Code Ann.Cts. & Jud.Proc. art., § 5–101. Appellant acquiesced in the judgment as to the individual defendants but appealed the summary judgments in favor of Perry, Qubic, and Consolidated. Her claim on appeal was that the action pled

by her was for breach of contract or breach of warranty and was thus subject to the four-year statute of limitations set forth in Comm.Law art., § 2–725.

On March 7, 1984, while her appeal was pending in this Court, appellant filed this action against the same defendants sued in the first action. Most of the allegations in the earlier complaint were repeated in this new one but were supplemented by averments that Perry and its employee were "duly appointed as authorized as agents [sic] for the purpose of shipping the said console," that they were authorized to appoint a sub-agent, that Qubic and its employee were "appointed agent to act as the shipper for the console," that they, in turn, appointed Consolidated to act as the carrier, and that all of these defendants had "the duties of bailees in dealing with the console." Reciting then that the console was damaged in transit and was properly rejected by the Holmeses, appellant charged the defendants with (1) negligence (¶ 27), (2) converting the console (¶ 29), (3) breach of contract with appellant "by delivering damaged and non-conforming goods" (¶ 30), and (4) breach of expressed and implied warranties (¶ 31). As concluding averments, appellant stated:

"33. That because of the Defendants [sic] breach of their contract and their negligence in delivering the console the Plaintiff has suffered damages and is entitled to indemnification from the Defendants for said damage.

34. That the Plaintiff did not know the extent of her damages until the judgment was entered against her and payment was made on or about August 1983 [sic]."[1]

---

**1.** This last allegation is not consistent with evidence produced by appellant showing that the jury verdict in the Virginia case was returned on January 31, 1983, that judgment was entered on February 11, 1983, and that the judgment (as to the console) was paid on March 14, 1983.

On these allegations, appellant asked for $50,000 in damages.

The defendants responded with a variety of defenses, but the court put the case on hold pending the outcome of the appeal. That outcome was announced October 29, 1984.

In a *per curiam* unreported opinion filed that day, we rejected appellant's contentions and affirmed the judgments. We concluded that the action pled in that case was one of negligence arising from a contract, to which Cts. & Jud.Proc. art., § 5–101 applied, and not one of breach of contract or breach of warranty. See *Hanscome v. Perry*, S.T.1984, No. 119 (unreported).

Upon the filing of our opinion and mandate, the Circuit Court lifted its stay and a flurry of motions ensued. Eventually, the case came to trial, on October 22, 1987. At the outset, however, the court, on motion, dismissed Consolidated and the individual defendants, and at the close of appellant's case, it entered judgment for Perry and Qubic. The latter action was based on findings by the court that (1) appellant failed to prove a contract subsequent to the purchase of the console on July 20, 1979, and (2) even if there were such a contract, the action would be barred by limitations.

We now have a second appeal in which appellant claims that:

"1. The Court erred in ruling that the cause of action for indemnification was subject to the same statute of limitations as the underlying cause of action in negligence.

2. The Court erred in not applying Maryland Uniform Commercial Code Section 2–504(c) requiring the seller of goods to properly notify the buyer of the shipment of the goods.

3. The Court erred by not applying Maryland U.C.C. Section 2–722 with its four (4) year statute of limitations instead of Code Section 5–101.

4. The Court erred in that it determined that the four (4) year statute of limitations of U.C.C. Section 2–725 did not apply and that Appellant[']s claim was time barred.

5. The Court erred in not allowing the conflicting testimony on and about evidence or the credibility of the witnesses to go to the trier of fact, the jury.

6. The Court erred in finding that the Appellant failed to prove any contract subsequent to the purchase and delivery of the console by Ms. Hanscome to her client."

Once again, we find no error and shall therefore affirm.

The legal theories posited to us by appellant are every bit as confusing as was her testimony concerning her role in arranging the shipment. On the one hand, she characterizes this second action as strictly one "for indemnification," thus seeking to commence the applicable period of limitations with her payment of the Virginia judgment, which she contends was in August, 1983, but which her testimony and exhibits clearly show was in April, 1983. On the other hand, she continues to seek recovery for the negligence, breach of contract, and conversion by Perry and Qubic.[2]

 As a preliminary matter, it seems clear to us that any direct action for negligence against Perry or Qubic is barred both by the three-year statute of limitations in Cts. & Jud.Proc. art., § 5–101 and by the direct holding to that

---

**2.** Although the record indicates rather clearly to the contrary, at oral argument counsel for appellant asserted that (1) Consolidated had not been sued in this action and (2) appellant voluntarily dismissed her claims against the individual defendants prior to trial. On that premise, he agreed that this appeal was directed only against Perry and Qubic and did not involve the other defendants. We shall treat it as so limited. Had we considered the matter, we would have concluded that appellant's action against the individual defendants was barred by the doctrine of *res judicata* (claim preclusion). Judgment was entered in their favor in the earlier action not because of limitations but because of insufficient evidence. That was obviously a decision on the merits that would bar not only the claims actually made in that case but also any claims that could have been litigated in that case. *MPC v. Kenny,* 279 Md. 29, 367 A.2d 486 (1977). All claims made in this action, including the claim for indemnification, were or could have been made in the earlier action.

effect in the earlier proceeding. Because that first action was strictly in negligence and did not encompass a claim for breach of contract, it is evident that any breach of contract claim now asserted by appellant was first filed on March 7, 1984, which was more than four years after the item was delivered and the breach was evident. Even if the four-year limitations period set forth in Comm. Law art., § 2-725(1) is applied, therefore, the action would still be time-barred.

Appellant seeks to escape the obvious impediment of § 2-725(1) by trying to fit within § 2-725(3). That section provides:

"Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action *for the same breach* such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute."

(Emphasis added.)

Appellant argues that, because her current action was filed "within six months after the termination of the first action," it is not time-barred under § 2-725(1). We find no merit in that argument.

Section 2-725(1), on its face, deals with an action for breach of contract. Indeed, all of § 2-725 pertains to actions for breach of contract. The Official Comment to § 2-725(3) states: "Subsection (3) states the saving provision included in many state statutes and permits an additional short period for bringing new actions, where suits begun within the four year period have been terminated so as to leave a remedy still available *for the same breach.*" (Emphasis added.)

It is evident from both the statute and the Official Comment to it that the additional limitations period provided for in § 2-725(3) applies only where an action for breach

of contract is commenced within the four-year period allowed by § 2–725(1) and that action is terminated in such a way as to leave available another action *for the same breach.* It has no application where the first action was based on something other than the breach of contract pled in the second action, which is precisely the case here. Appellant's first action was strictly for negligence and not for breach of contract. Section 2–725(3) is therefore of no assistance to her.

We turn, then, to the question of whether appellant has pled and established a case for indemnification to which a more favorable period of limitations would apply.

In approaching this issue, both sides have focused their attention on when limitations begins to run in an action for indemnification and have given but scant consideration to the nature of the indemnity claim actually made by appellant. As to the limitations question, we think that appellant is correct in her view that an action for indemnification accrues and the limitations period commences not at the time of the underlying transaction but when the would-be indemnitee pays the judgment arising from the underlying transaction. That seems to be the majority view, and it is certainly in keeping with the nature of an indemnity action. See *Jaswell Drill Corp. v. General Motors,* 129 N.H. 341, 529 A.2d 875, 879 (1987); *McDermott v. City of New York,* 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); *Cyr v. Michaud,* 454 A.2d 1376 (Me.1983); *Maxfield v. Simmons,* 96 Ill.2d 81, 70 Ill.Dec. 236, 449 N.E.2d 110 (1983); *Anixter Bros., Inc. v. Central Steel & Wire,* 123 Ill.App.3d 947, 79 Ill.Dec. 359, 463 N.E.2d 913 (1984); compare *Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214 (Utah 1984); *PPG Indus., Inc. v. Genson,* 135 Ga.App. 248, 217 S.E.2d 479 (1975).

That is not the end of the inquiry, however. In judging the propriety of the court's action, even on the limitations question, we must examine more carefully the basis of appellant's claim.

■ A right of indemnification can arise by express agreement or by implication. There is no evidence here of any express indemnity agreement, and so the issue hinges on whether appellant has shown an implied right of indemnification.

In *Peoples' Dem. Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir.1986), the Court observed that:

> "When, as here, there is no express agreement creating a right to indemnification, an implied right to indemnification can still be found in either of two sets of circumstances.... In one, an implied right to indemnification may be based on the special nature of a contractual relationship between parties.... This has been called an 'implied contract theory' of indemnity, ... or an 'implied in fact' indemnity.... A second set of circumstances in which indemnity may be found has been called 'implied in law' indemnity.... This is a tort-based right to indemnification found when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other."

(Citations omitted.)

It is evident from the case law that neither of these theories of implied indemnity are broad and all-embracing. The circumstances from which an implied right of indemnification has been recognized are, instead, rather limited.

■ Not every contract or contractual relationship will produce an implied indemnity. As stated in *Araujo v. Woods Hole, Martha's Vineyard, Etc.*, 693 F.2d 1, 2 (1st Cir.1982), "a contractual right to indemnification will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility ... or when there is a generally recognized special relationship between the parties." See also *Ryan Co. v. Pan–Atlantic Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Parks v. United States*, 784 F.2d 20, 25 (1st Cir.1986); *Read v. United*

*States,* 201 F.2d 758 (3d Cir.1953); *Roy v. Star Chopper Co., Inc.,* 442 F.Supp. 1010 (D.R.I.1977), *aff'd* 584 F.2d 1124 (1st Cir.1978), *cert. denied* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); and *Oates v. Diamond Shamrock Corp.,* 23 Mass.App. 446, 503 N.E.2d 58, 59, *cert. denied* 399 Mass. 1104, 506 N.E.2d 146 (1987).

Generally, the mere relationship between vendor and vendee does not, of itself, suffice to produce an implied contractual right of indemnification, especially where the would-be indemnitor is the vendee. *Roy v. Star Chopper Co., supra.* Nor do we see an implied indemnity necessarily arising from Comm. Law art., § 2–722. That section provides:

"Where a third party so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract

(a) A right of action against the third party is in either party to the contract for sale who has title to or a security interest or a special property or an insurable interest in the goods; and if the goods have been destroyed or converted a right of action is also in the party who either bore the risk of loss under the contract for sale or has since the injury assumed that risk as against the other;

(b) If at the time of the injury the party plaintiff did not bear the risk of loss as against the other party to the contract for sale and there is no arrangement between them for disposition of the recovery, his suit or settlement is subject to his own interest, as a fiduciary for the other party to the contract;

(c) Either party may with the consent of the other sue for the benefit of whom it may concern."

The function of § 2–722, according to the Official Comment to that section, is simply to "provide for suit by the real party in interest." It may well be that appellant could have used § 2–722 as a basis for impleading Perry and Qubic into the Virginia case or as an alternative basis for

her earlier Maryland action. But we do not regard § 2–722 as altering the common law principles applicable to implied indemnities or as intended to allow a party in interest to evade the four-year statute of limitations provided for in § 2–725.

The tort-based right is articulated most succinctly in the *Restatement of Restitution* § 96: "A person who, *without personal fault*, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability." (Emphasis added.)

As indicated in Comment *a* to that section, this doctrine is most frequently applied where "a person is made responsible for the conduct of another who is engaged in conducting matters on his account." See also *Fireman's Fund American Ins. Companies v. Turner*, 260 Or. 30, 488 P.2d 429, 431 (1971): "an employer held vicariously liable to a third person injured by the negligence of an employee, without negligence on the part of the employer, may seek indemnity against the employee."

Most courts have taken a liberal view of the "without personal fault" condition expressed in the Restatement and have refrained from denying an implied right of indemnification merely because the party seeking it has some measure of direct culpability. These courts have tended to view the tort-based right as "designed to allocate the cost of negligence to the joint tortfeasor *primarily responsible*," *Goodpasture, supra*, 782 F.2d at 351, and have noted that "[i]ndemnity is also frequently allowed a party guilty of *passive* negligence against one guilty of *active or positive* negligence." *Rozmajzl v. Northland Greyhound Lines*, 242 Iowa 1135, 49 N.W.2d 501, 506 (1951) (emphasis added in both quotations). See also *Traylor v. Gray*, 547 S.W.2d 644, 658 (Tex.Civ.App.1977); *Florida Power Corporation v. Taylor*, 332 So.2d 687 (Fla.App.1976); 41 Am.Jur.2d *Indemnity*, § 20; but compare *Builders Supply Co. v. McCabe*,

366 Pa. 322, 77 A.2d 368, 370 (1951); *Sirianni v. Nugent Bros., Inc.,* 331 Pa.Super. 145, 480 A.2d 285 (1984), *aff'd* 509 Pa. 564, 506 A.2d 868 (1986); *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 N.J. 55, 159 A.2d 97 (1960); *Houdaille Industries, Inc. v. Edwards,* 374 So.2d 490 (Fla.1979).[3]

To the extent that the *Goodpasture* view may be regarded as a departure from a strict adherence to the "without personal fault" notion, Maryland seems to be in that camp, having allowed a passively negligent tortfeasor to recover against "the sole actual wrongdoer and creator of the dangerous condition" that caused the injury. *Balto. & Ohio R. Co. v. Howard Co.,* 113 Md. 404, 416, 77 A. 930 (1910).

 Even against the most liberal view of either theory —the contract-based or tort-based right of indemnification—we find appellant's case lacking.

Appellant's sole contact in this matter was with Perry. On July 20, 1979, she purchased the console from Perry for

---

**3.** The extent to which an "active/passive" analysis is consistent with the "without personal fault" requirement is not altogether clear. In *Houdaille Industries, Inc.,* the Florida Supreme Court observed, 374 So.2d at 493:

> "Indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be no indemnity between joint tortfeasors.... A weighing of the relative fault of tortfeasors has no place in the concept of indemnity for the one seeking indemnity must be without fault.... Indemnity can only be applied where the liability of the person seeking indemnity is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed.
>
> Although courts of this state have consistently premised the allowance of indemnity upon a special relationship between the primary defendant and the third-party defendant, confusion seems to have arisen over the use of the labels employed to designate the conduct of the parties which will permit the party seeking indemnity to recover. The active-passive terminology has been criticized as possibly denoting degrees of fault, and it has been suggested that the terms primary and secondary are more accurate and technically correct.... Regardless of what specific terms are employed— whether the courts say active-passive or primary-secondary—what they are really speaking of is fault or no fault...."

(Citations omitted.)

$720 upon the express understanding that her customers, Mr. and Mrs. Holmes, would remove the item from the showroom. Insofar as Perry was concerned, the sale was complete and delivery was made that day. From its perspective, the only open obligations were those of appellant —to pay the balance due on the item (which she did three days later) and to see to its removal from the showroom. It goes without saying that, at that point, Qubic was a complete stranger to the transaction.

Giving appellant the best of her completely inconsistent testimony, it appears that, at some later point, appellant asked Perry to modify one aspect of their agreement, i.e., to arrange for the shipment of the console to Utah. Perry agreed to do that, at no expense to itself; the item was to be shipped C.O.D. and appellant, presumably as an agent for the Holmeses, was to pay for the crating. Perry undertook to carry out this new arrangement through Qubic, which, in turn, crated the console and engaged Consolidated to transport it. It is evident, and indeed undisputed, that appellant had nothing whatever to do with that aspect of the transaction; she did not solicit Qubic or Consolidated, did not direct their activities, did not pay them, and had no contact with them. There is nothing to indicate that either Qubic or Consolidated intended to act on behalf of appellant; the documents generated by Consolidated show Qubic as the shipper and the Holmeses as consignees. Nor is there any indication in the record of how the item became damaged, much less who caused it to become damaged.

The inescapable conclusion from this record is that, as an accommodation to appellant, Perry agreed to arrange for the item to be shipped to the Holmeses at their expense, that, as an accommodation to *Perry*, its customer, Qubic undertook to ship the console and that it employed Consolidated to actually transport the item. It is apparent, then, that Qubic had no contract with appellant from which a contract-based right of indemnification could arise. Nor can we discern any duty imposed by law on its part flowing to appellant from which a tort-based right could arise.

Qubic may have had some duty of care to Perry, but, as appellant was a complete stranger to the dealings between them, Qubic would have no duty to her. There is nothing in the record to suggest that, at the time these arrangements were made, Qubic even knew of appellant's involvement.

Perry, having agreed as an accommodation to appellant to undertake the shipment, did have a responsibility to act reasonably. But there is nothing in the record to indicate that it did not do so. There is no evidence that it caused the damage or that it was guilty of negligent entrustment to Qubic, much less to Consolidated. Though attempting to disguise her theory as one of indemnification based on negligence or contract, appellant in essence is seeking to hold Perry liable as an insurer, and it does not have that kind of liability.

Appellant had at least one and probably two opportunities to build a clear record of responsibility and failed to take advantage of them. She could have impleaded Perry and Qubic into the Virginia case as third-party defendants, and she could have sued them in the earlier Maryland case for breach of contract. Had she done either, she could have avoided the limitations problem that cut short her first action in Maryland and developed whatever facts there were to develop. On this record, however, we have much theory but pitifully few facts.

In this regard, it is important to keep in mind the underlying nature and purpose of an *implied* right of indemnification. As pointed out by the New York Court in *McDermott v. City of New York, supra,* 428 N.Y.S.2d 643, 406 N.E.2d 460, at 462:

"Conceptually, implied indemnification finds its roots in the principles of equity. It is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity' (Restatement, Restitution, § 76). To prevent unjust enrichment,

courts have assumed the duty of placing the obligation where in equity it belongs...."

Appellant, for all her theorizing, has not shown that the obligation belongs with Perry or Qubic. She has not established which, if either, of them caused the damage, although she had at least two clear opportunities to do so. This case, on its facts, is simply an attempted end run around the statute of limitations, which the law does not allow.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.