Argued February 2, affirmed March 31, 1971

# GENERAL INSURANCE COMPANY OF AMERICA, *Appellant, v.* P. S. LORD MECHANICAL CONTRACTORS, *Respondent.*

482 P2d 709

*Carrell F. Bradley*, Hillsboro, argued the cause for appellant. With him on the briefs were Joe D. Bailey and Schwenn, Bradley & Batchelor, Hillsboro.

*George M. Joseph,* Portland, argued the cause for respondent. With him on the brief were Thomas S. Moore and Morrison & Bailey, Portland.

Before O'Connell, Chief Justice, and McAllister, Denecke, Holman, Howell and Bryson, Justices.

DENECKE, J.

The plaintiff's insured, Colby Steel, the defendant Lord and others were sued by Waterway Terminals for fire damage allegedly caused by the negligence of all defendants in that case. Waterway recovered a judgment against defendants. The plaintiffs brought this action for indemnity against Lord for the sum of $70,000 incurred as defense costs in defending Colby in the Waterway litigation. The trial court sitting without a jury found for the defendant and plaintiff appeals.

The complaint alleges and the evidence is that Colby undertook to manufacture and install elevator equipment in the dock and warehouse being built for

Waterway Terminals. Lord, in turn, contracted with Colby to install the elevators. Lord contracted with Colby "to safely erect the component parts of the equipment under the direction of the manufacturer's [Colby] field engineer. * * * All work to be carried out under the supervision of the manufacturer's field engineer."

The evidence in the trial of Waterway's action against Lord and Colby was that the fire was caused by Lord's welding. Exactly how the fire was started is not known. Sparks or hot slag could have fallen on timbers below, or timbers near the welding could have been started afire from the flame of the welding torch.

Waterway's complaint charged Colby, Lord and the other defendants with the same acts of negligence, which included the failure to take those precautions necessary to prevent the welder from burning the timbers. In the present case, plaintiff's complaint alleges "judgment against Colby [in favor of Waterway] was allowed upon the theory that Colby was vicariously liable for the acts of Lord." The record in the Waterway case does not reveal whether Colby was held liable to Waterway vicariously because of Lord's negligence or directly because of the negligence of Colby itself. Lord's answer in the present case alleges "Colby was negligent in failing to properly supervise defendant's work" and such negligence was a cause of the fire.

Lord's contract with Colby had no express indemnity provisions. If plaintiff is entitled to recover it must be on the theory of an implied right to indemnity which one tortfeasor has against another tortfeasor in some circumstances. This right was first recognized by this court in an opinion by Mr. Justice CHARLES McNARY in *Astoria v. Astoria & Columbia*

*River Co.*, 67 Or 538, 136 P 645, 49 LRA (NS) 404 (1913). The city of Astoria had granted a right of way to the railroad over one of its streets. The railroad negligently improved the right of way which caused a pedestrian to fall and injure herself. She brought an action against the city for damages for failure to keep the street in reasonably safe condition. The city demanded that the railroad defend the action; it refused. The injured party recovered a judgment against the city and the city brought an action for indemnity. This court affirmed a judgment of indemnity for the city. We expressed the conditions under which indemnity would be granted in a variety of terms. One expression of the rule was that if the tortfeasors stand in *pari delicto*, that is, in equal degree, one tortfeasor cannot recover indemnity from the other; however, if they are not equally culpable indemnity can be secured.

The proposition was also stated that the city could recover indemnity because "the active negligence charged is against the railroad company, while passive negligence only is laid at the feet of the municipality." 67 Or at 548.

This kind of case in which a municipality is allowed recovery against one who is responsible for a defect on a street or sidewalk is a widely accepted category for the awarding of indemnity. Davis, *Indemnity Between Negligent Tortfeasors: A Proposed Rationale*, 37 Iowa L Rev 517, 524 (1952).

We granted indemnity under different circumstances in *Kennedy v. Colt*, 216 Or 647, 339 P2d 450 (1959). There, the defendant sold the plaintiffs some timber and took them out on the ground to identify the boundary lines of the sale. Plaintiffs cut pursuant to defendant's directions and thereby cut the timber

of a third party who sued plaintiffs for the timber so cut. Plaintiffs requested the defendant to take over the defense and the payment of any possible judgment and defendant refused. The third party secured a judgment against plaintiffs and they brought an action for implied indemnity. We held plaintiffs were entitled to indemnity because the defendant was "primarily responsible for the trespass by plaintiffs and thus constructively liable for it." 216 Or at 655. In *U. S. Fid. & Guar. Co. v. Thomlinson Co.*, 172 Or 307, 324-330, 141 P2d 817 (1943), we discussed indemnity in similar terms.

The words "passive" versus "active" and "secondary" versus "primary" are not sufficiently precise to provide clear guidelines for this area. Prosser observes, however: "* * * [I]t is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not." He formulated the rule: "* * * [T]he duty to indemnify will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other." Prosser, Torts, 281 (3d ed).

1. Fact situations at either end of the scale are easy to solve. A party held responsible by reason of his vicarious liability for the negligence of another, such as a servant or independent contractor, can recover indemnity from the servant or independent contractor. *U. S. Fid. & Guar. Co. v. Thomlinson*, supra (172 Or 307). See cases in Annotation, 38 ALR 566 (1925); Restatement 418, Restitution § 96. On the other end of the scale, if a bus drove negligently and was hit by a truck driven negligently, and a bus passenger was injured, neither the truck nor the bus operator could secure indemnity from the other. *Dallas*

*Ry. & Terminal Co. v. Harmon*, 200 SW2d 854 (Tex Civ App 1947).

■ In the instant case the trial court found that the facts were similar in legal effect to the latter example, that is, that Colby "was an active, positive and primary participant in the acts or omissions which Waterway contended proximately caused its fire loss." The evidence supports such finding.

The trial court in its written opinion pointed out that Waterway charged both Lord and Colby with negligence in failing to provide a lookout and adequate fire extinguishing equipment and in failing to properly shield the dock timbers from the material being welded. Colby's engineer testified that he had "instructed," "agreed" and "discussed" with Lord's supervisor the fire precautions to be in effect, including the lookout, fire extinguishers and shield. Under the existing principles of indemnity, Colby is not entitled to indemnity.

■ In the alternative, plaintiff urges that we adopt the principles of indemnity laid down by the United States Supreme Court in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 US 124, 76 S Ct 232, 100 L Ed 133 (1956). In this area the decisions of the United States Supreme Court, of course, are only persuasive, not binding.

In the *Ryan* case a longshoreman working aboard a vessel was injured because of improper stowage by the stevedore. The longshoreman recovered a judgment against the ship, either upon the theory of negligence or of unseaworthiness. The ship, in turn, sought indemnity from the stevedore. The stevedore had contracted with the ship to load the ship and properly stow the cargo. The ship retained the right to super-

vise the stowage and reject improperly stowed cargo. The contract between the ship and the stevedore contained no express indemnity agreement. The Court held the ship had a right of indemnity against the stevedore. Recovery was based entirely upon the stevedore's contractual obligation to load the ship, including the obligation to properly stow the cargo. This obligation was referred to as being in the nature of a warranty. That the ship failed to supervise properly or to discover and correct the improper stowage was held to be no defense.

In *Weyerhaeuser S. S. Co. v. Nacirema Co.*, 355 US 563, 78 S Ct 438, 2 L Ed2d 491 (1958), this theory was referred to as "contractual indemnity" despite the absence of any contract of indemnity. Moreover, in *Crumady v. "Joachim Hendrik Fisser,"* 358 US 423, 79 S Ct 445, 3 L Ed2d 413 (1959), and *Waterman S. S. Corp. v. Dugan & McNamara*, 364 US 421, 81 S Ct 200, 5 L Ed2d 169 (1960), the stevedore was held liable for "contractual indemnity" despite there being no contract between the stevedore and ship.

In the *Crumady* case the ship was granted indemnity although one cause of the injury was that the ship furnished an unsafe device and the stevedore "merely brought into play an unseaworthy condition created by the vessel itself." 358 US at 433. In *Italia Societa v. Oregon Stevedoring Co.*, 376 US 315, 84 S Ct 748, 11 L Ed2d 732 (1964), the court held that the stevedore must indemnify the ship "where the stevedore has non-negligently supplied defective equipment which injures one of its employees during the course of stevedoring operations." 376 US at 316. The defect was latent and not discoverable by a reasonable inspection.

The *Ryan* doctrine evolved because of two peculiar rules concerning a longshoreman's right of re-

covery. First of all, regardless of the employer's negligence, the exclusive remedy of an injured longshoreman directly against his employer, the stevedore, is compensation pursuant to the fixed schedules of the Longshoremen's and Harbor Workers' Compensation Act. 33 USC § 905. Secondly, a ship is liable to a longshoreman because of the doctrine of unseaworthiness; no showing of fault is required and recovery is not limited to scheduled compensation. The *Ryan* doctrine in its inception permitted the shipowner, sued on an unseaworthiness theory, to shift the cost of the longshoreman's injury to the negligent stevedore even though the recovery exceeded the fixed schedule of the Compensation Act. Presumably, the reason for the rule was that the Supreme Court felt the burden of loss properly belonged on the negligent employer and a special rule of indemnity between shipowner and stevedore was needed to accomplish the shift. As stated above, however, the doctrine has now been extended to allow the shipowner to shift the cost of the injury to a nonnegligent employer.

The peculiar rules affecting a longshoreman's right of recovery against his employer are not present in a case such as the one we are now deciding involving indemnity between a negligent contractor and a negligent subcontractor. There is, therefore, no necessity to depart from our existing law of implied indemnity. In addition we know of no policy reasons which would lead us to adopt a principle like the *Ryan* doctrine which has been construed to grant indemnity against a nonnegligent party, *Italia Societa v. Oregon Stevedoring Co.*, supra (376 US 315).

Affirmed.

McALLISTER, J., concurs in the result.