Argued and submitted January 25, resubmitted In Banc November 8, 1989, reversed and remanded for new trial on Jackson's claim for common-law indemnity; otherwise affirmed February 14,.1990

SCOTT,
*Plaintiff,*

*v.*

FRANCIS et al,
*Defendants,*

LOPEZ,
*Respondent,*

*and*

JACKSON,
*Appellant.*

(A8412-07550; CA A46646)

786 P2d 1269

Patrick N. Rothwell, Portland, argued the cause for appellant. With him on the briefs was Hallmark, Keating & Abbott, P.C., Portland.

John Folawn, Portland, argued the cause for respondent. With him on the brief were Martin W. Jaqua and Holmes & Folawn, Portland.

BUTTLER, J.

Warren, J., dissenting.

## BUTTLER, J.

Defendant Jackson appeals from a judgment entered on a directed verdict against him at the close of his case-in-chief on his cross-claim for indemnity against defendant Lopez. Defendants had settled a legal malpractice claim asserted against them by plaintiff Scott for their failure to file her complaint for medical malpractice within the Statute of Limitations. Jackson contends that (1) he is entitled to common law indemnity, because his negligence was passive and that Lopez' was active, and that (2) Lopez made an enforceable oral promise to indemnify him. We conclude that Jackson made a *prima facie* case for common law indemnity, but not for contractual indemnity. Therefore, we affirm in part and reverse and remand in part.

On December 13, 1979, Scott retained Lopez, a Washington attorney who was not licensed to practice law in Oregon, to pursue a medical malpractice claim arising from cancer surgery performed on her in Oregon in the summer of 1979. Lopez did nothing about filing an action until the spring of 1981, when he contacted Jackson, an Oregon attorney whom he knew, to become associated in the case. Jackson said that he had had no experience in that field, but Lopez assured him that that was not necessary, because his firm would provide the expertise; he needed an attorney licensed in Oregon to file the complaint. Jackson was to receive 50 percent of any attorney fees earned.

Lopez did not contact Jackson again until July 24, 1981, when Jackson received a letter from him, enclosing a proposed complaint. Jackson was instructed to modify the proposed complaint to conform to Oregon procedural rules, put it on his pleading paper and get it filed "as soon as possible." Jackson telephoned Lopez and told him that he believed that the complaint was insufficient to meet Oregon pleading requirements. The complaint contained none of the dates relevant to determining when the Statute of Limitations had commenced to run. Jackson asked Lopez whether there was any time pressure, and Lopez assured him that there was not. Jackson did ask Lopez for the date of the alleged negligence so that he could revise the complaint, and Lopez said that he would have to get back to him. Even though Jackson was instructed not to initiate contact with the Scotts, he admits

that, *vis-a-vis* Scott, he was negligent in relying on Lopez. If the proposed complaint had been filed at that time, it would have been timely.

Jackson did not learn of the relevant date until Lopez spoke to him on November 9, 1981, telling him for the first time the dates that were relevant to Scott's claim. Jackson expressed misgivings about working further on a case that appeared to be time-barred, but Lopez assured Jackson that he "would handle that argument if the issue was raised." On November 11, Lopez again told Jackson that the Statute of Limitations problem was Lopez' problem and that he would take care of it. Jackson filed a complaint on November 12.

Jackson eventually tried the case to a jury, which found that the action was barred by the Statute of Limitations. Scott sued Lopez' firm and Jackson for malpractice. The case was settled for $65,000, of which Lopez paid $50,000 and Jackson paid $15,000. Jackson now seeks indemnity for the amount he paid, plus $7,398 expended in defending Scott's action. Jackson's action against Lopez was tried to a jury; at the close of the case-in-chief, Lopez' motion for directed verdict was granted.

■ Jackson first contends that the trial court erred in directing a verdict against him on his common law indemnity claim, because the jury could have found that his negligence was "passive" and that Lopez's negligence was "active," thus entitling him to indemnity from Lopez. He relies on *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972):

> "In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. * * * The last requirement means that, although the claimant must have been legally liable to the injured third party, his liability must have been 'secondary' or his fault merely 'passive,' while that of the defendant must have been 'active' or 'primary.' "

The court went on to say that the active-passive and primary-secondary formulations do not provide precise guidelines for deciding close cases. 261 Or at 211; *see General Ins. Co. v. P.S. Lord,* 258 Or 332, 482 P2d 709 (1971). Nevertheless, the

court's formulation of the general rule has not been abandoned, although the court stated a more general basis for indemnity between tortfeasors as involving "the equitable distribution of responsibility" and pointed out that "there can be no all-encompassing rule."[1] *Piehl v. The Dalles General Hospital,* 280 Or 613, 620, 571 P2d 149 (1977). In that case, the court fell back to the *Fulton Ins.* formulation, holding that the defendant doctor's failure to discover and remove a sponge from a patient constituted active negligence and, because the defendant nurses' failure was also active, neither was entitled to indemnity from the other.

Regardless of whether one views Jackson's negligence as passive or active, it is not different in kind from that

---

[1] *Restatement (Second) Torts* § 886B (1977) does not attempt to formulate an all-encompassing rule. It states:

"(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

"(2) Instances in which indemnity is granted under this principle include the following:

"(a) The indemnitee was liable only vicariously for the conduct of the indemnitor;

"(b) The indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful;

"(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied;

"(d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

"(e) The indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

"(f) The indemnitor was under a duty to the indemnitee to protect him against the liability to the third person."

Oregon cases allowing indemnity fall in line with the instances cited in the Restatement: In *Fireman's Fd. Am. Ins. Cos. v. Turner,* 260 Or 30, 488 P2d 429 (1971), indemnity was permitted to an employer held vicariously liable for the torts of its employes. Section 886B(2)(a). In *Kennedy et al v. Colt,* 216 Or 647, 339 P2d 450 (1959), indemnity was permitted when the indemnitees, acting in what they reasonably believed to be a lawful manner at the direction of the indemnitor was held liable for acting in reliance on a misrepresentation of the indemnitor. Section 886B(2)(b) and (c). In *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 493 P2d 138 (1972), indemnity was permitted against the manufacturer of a defective product when the seller was held liable for its failure to inspect and discover the defect. Section 886(2)(d). In *Astoria v. Astoria & Columbia River R. Co.,* 67 Or 538, 136 P 645 (1913), indemnity was permitted where the indemnitor created a dangerous condition on land, and the indemnitee was held liable for its failure to detect and remedy the hazard. Section 886B(2)(e).

of Lopez: Both attorneys failed in their duty to Scott to commence the action within the time permitted by law. Jackson's liability to Scott was premised on his own negligence, which he concedes as to her, even though he was precluded from contacting the Scotts. Because the nature of the two lawyers' negligence was the same, one cannot be said to have been active and the other passive. Accordingly, Jackson's claim that his negligence was passive and Lopez's was active fails.

■    Jackson also contends that, because he relied on Lopez's assurance that there was no time problem, he comes within the rule of *Kennedy et al v. Colt, supra,* applying the primary versus secondary responsibility test stated in *Fulton Ins. v. White Motor Corp., supra.* In that case, the plaintiffs' liability for trespass resulted from their following the express instruction of the defendant as to where to cut timber from land that they had purchased from defendant. The plaintiffs could have ascertained the property lines of the land before they cut the timber; instead, they relied on the defendant's advice as to the location of the lines. Although the court did not so state, it is apparent that both parties were negligent in the same respect—they failed to ascertain the true property lines. The plaintiffs were actively negligent in the sense that they cut the timber on land belonging to a third party; the defendant did not cut any of the timber and, therefore, could be said to have been passively negligent. Instead of following that analysis, the court held that the evidence would permit a jury to find that the defendant was primarily responsible and that plaintiffs were secondarily responsible, in which case indemnity would be proper.

Here, Lopez did not tell Jackson not to file the proposed complaint, but he did assure Jackson that there was no time problem, and Jackson relied on that assurance. Although we confess some uncertainty as to the application or breadth of the primary versus secondary responsibility test, the court appears to have stated it more generally as "the equitable distribution of responsibility." *Piehl v. The Dalles General Hospital, supra.* The dissent states that indemnity is not permitted, unless the parties' liability to the injured party is "qualitatively different." 100 Or App at 399. Although that simple rule would be easier to apply, the Oregon cases do not appear to bear it out. *See* note 1. It not only ignores the primary-secondary responsibility analysis in *Kennedy et al v.*

*Colt, supra,* it ignores the statement of the rule in *Fulton Ins. v. White Motor Corp., supra,* and its expression in *Piehl,* and also what the court said in *General Ins. Co. v. P. S. Lord,* 258 Or 332, 482 P2d 709 (1971), in which the court reviewed the Oregon cases on indemnity:

> "We expressed the conditions under which indemnity would be granted in a variety of terms. One expression of the rule was that if the tortfeasors stand in *pari delicto,* that is, in equal degree, one tortfeasor cannot recover indemnity from the other; however, if they are not equally culpable indemnity can be secured." 258 Or at 335.

Here, as between Jackson and Scott, Lopez admitted that getting the complaint filed within the time permitted was *solely* his responsibility. Given that evidence, a jury could reasonably find that, even though both attorneys were negligent as to Scott and that the nature of their negligence was the same, Lopez, as between the two attorneys, had assumed full responsibility for getting the complaint filed timely. Accordingly, a jury could reasonably find that Lopez was primarily responsible for Scott's damage, that Jackson was secondarily responsible for it and that an equitable distribution of responsibility requires that all of the damage to Scott should be borne by Lopez. Therefore, a directed verdict should not have been entered in favor of Lopez on the common law indemnity claim.

We now turn to Jackson's claim for contractual indemnity. That claim is based on Lopez' alleged promise to indemnify Jackson for any liability arising from his representation of plaintiff. Jackson admits that the promise to indemnify was oral and was, therefore, unenforceable as a contract under the Statute of Frauds. ORS 41.580. However, he asserts that he presented a *prima facie* case for promissory estoppel to avoid the Statute of Frauds. The assurances on which he relies were made in November, 1981, after Jackson had already begun working on the case and had already incurred liability, because the Statute of Limitations had already run. Because the only damages prayed for arose from facts preceding Lopez' alleged promise, Jackson's reliance on that promise could not have been detrimental to him. The trial court did not err in directing a verdict against Jackson on the contractual indemnity claim.

Reversed and remanded for a new trial on Jackson's claim for common law indemnity; otherwise affirmed.

**WARREN, J.,** dissenting.

To recover indemnity, a claimant must prove that both the claimant and the defendant were liable to third party and that, as between the two, the defendant ought to pay. *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 210, 493 P2d 138 (1972). The latter element is met when the claimant's liability is passive or secondary and the defendant's liability is active or primary. Although those terms are somewhat obtuse, it is clear that, at the minimum, they require that the basis for the liability of the party seeking indemnity be different from that of the party from whom indemnity is sought. In this case, the majority acknowledges that "the nature of the two lawyers' negligence was the same." Because the difference in the attorneys' liabilities was a difference in degree, not in kind, Jackson was not entitled to be indemnified by Lopez. Accordingly, I dissent.

The majority cites several cases in which indemnity was held appropriate. None is analogous to the present case. The continuing thread through the cases is that, in each, the parties' liabilities were qualitatively different. For example, in *Astoria v. Astoria & Columbia River R. Co.,* 67 Or 538, 136 P 645 (1913), the railroad was liable for a pedestrian's injury because it negligently created the unsafe condition; the city was liable only because it failed to discover that the railroad had not built the track safely. Similarly, a retailer may receive indemnity from a manufacturer that actually created a defect in a product when the retainer is liable only because it failed to discover the defect or by operation of law. *Smith Radio v. Challenger Equip.,* 270 Or 322, 527 P2d 711 (1974).

In sharp contrast are the cases in which indemnity was disallowed. For example, in *Piehl v. The Dalles General Hospital,* 280 Or 613, 571 P2d 149 (1977), the evidence showed that both the doctor and the nurses were independently negligent in leaving a sponge in a surgery patient's abdomen. Because the nature of their liability was the same, neither could receive indemnity from the other. Similarly, in *General Ins. Co. v. P.S. Lord,* 258 Or 332, 482 P2d 709 (1971), a contractor was denied indemnity from the subcontractor when both had participated in installing the elevator, even though

the subcontractor had performed most of the work. Those cases show that, when the parties are joint tortfeasors who breach the same duty to the third party, indemnity is not allowed.

*Kennedy et al v. Colt,* 216 Or 647, 339 P2d 450 (1959), on which the majority mistakenly relies, is consistent with that rule. The majority distorts the facts of *Kennedy* in order to fit this case within its holding. The majority states that both parties in *Kennedy* "were negligent in the same respect." 100 Or App at 397. That statement is puzzling, given that *Kennedy* was not a negligence case, the word "negligence" does not appear in the opinion and the court specifically noted that the plaintiffs were not in any way careless. 216 Or at 654. *Kennedy* was a trespass case. The plaintiffs had purchased timber from the defendant, and the defendant had showed the plaintiffs where the timber was located. After the plaintiffs had cut the timber, they discovered that it was on land not owned by the defendant. The landowner got a judgment against the plaintiffs for trespass, and the Supreme Court held that the plaintiffs could recover indemnity from the defendant. Indemnity was available because the plaintiffs had not acted deliberately or carelessly and the defendant had caused the harm by misrepresenting that the land was hers.

In the present case, as the majority acknowledges, "[b]oth attorneys failed in their duty to Scott to commence the action within the time permitted by law." 100 Or App at 397. Jackson's liability to Scott was premised on his own negligence. Because the nature of the two lawyers' negligence was the same, neither is entitled to indemnity from the other. Jackson should not be entitled to a jury decision on the common law indemnity claim that, as between him and Lopez, Lopez should carry the entire burden of their joint negligence.

Joseph, C. J., and Rossman and Deits, JJ., join in this dissent.