Argued and submitted April 8, affirmed June 12, 2002

Richard MAURMANN
and Kirsten Maurmann,
*Plaintiffs,*

*v.*

DEL MORROW CONSTRUCTION, INC.,
an Oregon corporation;
North Santiam Paving, Inc.,
an Oregon corporation;
and City of Salem,
*Defendants.*

NORTH SANTIAM PAVING, INC.,
an Oregon corporation,
*Third-Party Plaintiff,*

*v.*

Gerald ARNOLD,
dba Arnold Construction NW;
William L. Kostenborder; Steven Burton;
William Ringalda;
and Fountain Engineering, Inc.,
an Oregon corporation,
*Third-Party Defendants.*

DEL MORROW CONSTRUCTION, INC.,
an Oregon corporation,
*Respondent,*

*v.*

NORTH SANTIAM PAVING, INC.,
an Oregon corporation,
*Appellant.*

98C-15468; A113197

48 P3d 185

Bruce R. Gilbert argued the cause for appellant. With him on the briefs was Smith, Freed, Chock & Eberhard, PC.

Alan Gladstone argued the cause for respondent. With him on the brief was Abbott, Davis, Rothwell, Mullin, Earle, PC.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

This dispute stems from two landslides in the Shadow Creek Estates subdivision in Salem that resulted in damage to property in both Shadow Creek and an adjacent subdivision. Cross-claim defendant North Santiam Paving, Inc., appeals from a judgment awarding cross-claim plaintiff Del Morrow Construction, Inc., indemnity for the amount Del Morrow paid to defend and settle claims made by two home-owners in the adjacent subdivision, as well as to defend a related claim by the City of Salem. North Santiam argues that, given an earlier jury determination that Del Morrow was itself comparatively negligent in causing the landslide-related damages, the trial court was, as a matter of law, barred from awarding Del Morrow indemnity. We conclude that, on this record, the jury's apportionment of comparative fault did not preclude the trial court from determining that Del Morrow was entitled to indemnity. Accordingly, we affirm.

The material facts are largely undisputed. Del Morrow, the developer of Shadow Creek Estates, contracted with North Santiam to engineer and construct the subdivision. In June 1997, North Santiam conducted some excavation on several of the lots in Shadow Creek, removing soil from an area downslope from an adjacent subdivision, Gibson Woods Court. In January 1998, the slope above the June 1997 excavation slid, resulting in damage to property owned by Richard and Kirsten Maurmann and David and Bonnie Arnold in Gibson Woods Court. In March 1999, a second landslide occurred in an area northwest of the first landslide. Both landslides required significant remediation work and, as a consequence of the necessary remediation, several undeveloped lots in Shadow Creek were rendered unmarketable. In addition, the landslides apparently damaged road-ways and municipal facilities owned by the City of Salem.

Neighbors[1] asserted claims against both North Santiam and Del Morrow to recover for the damage to their properties. Del Morrow filed a cross claim against North

---

[1] For ease of reference, "neighbors" denotes the Maurmanns, the Arnolds, and the City of Salem, collectively.

Santiam, alleging, *inter alia*, negligence, breach of contract, and common-law indemnity. Del Morrow's negligence and breach of contract claims both sought damages for (1) the decreased value of Del Morrow's own lots in Shadow Creek; and (2) the costs of litigating and satisfying neighbors' property damage claims. Del Morrow's common-law indemnity claim sought to recover all costs incurred in defending and satisfying neighbors' claims.

North Santiam responded by alleging several affirmative defenses, including comparative negligence and breach of contract. Both of those defenses were predicated on allegations that Del Morrow had itself been negligent, and had breached its contract with North Santiam, in three particulars:

"By failing to disclose to [defendant] geotechnical information regarding the area including, but not limited to, the Shannon & Wilson, 1978 report, and the Fujitani Hilts & Associates, 1990 report.

"By directing [defendant] to excavate and remove dirt contrary to the above referenced reports and geotechnical information.

"By failing to provide [defendant] with information known, or that should have reasonably shown have been known, by [plaintiff], that was relevant to [defendant] for the excavation activities to be performed."

Before trial, Del Morrow and North Santiam resolved their respective disputes with neighbors. Thus, at trial, the only remaining issues pertained to their competing cross claims and defenses. The case was tried to a jury. Before closing arguments, the parties agreed to have the court decide the indemnity issue. The jury subsequently returned its special verdict on Del Morrow's negligence and breach of contract cross-claims. That verdict determined that: (1) both parties had been negligent; (2) both parties had materially breached their contractual obligations to each other; and (3) Del Morrow's damages were caused 80 percent by North Santiam's negligence and breach of contract and 20 percent by its own negligence and breach of contract.[2]

---

[2] North Santiam, as appellant, did not order or designate any part of the transcript as part of the record on appeal. Consequently, the record is silent as to the

The trial court did not consider and decide the indemnity claim concurrently with the jury's verdict. After the jury rendered its verdict, Del Morrow and North Pacific disputed the effect, if any, of that verdict—and, particularly, the jury's determination that Del Morrow had been comparatively negligent and had materially breached the contract—on Del Morrow's asserted entitlement to indemnity for the costs of defending and settling neighbors' claims. In particular, North Santiam argued that: (1) the court was bound by the jury's findings; (2) under Oregon law, indemnity is available only if the person against whom indemnity is sought is solely or fully responsible for the harm to the third party; (3) because the jury determined that Del Morrow was 20 percent at fault, North Santiam could not have been "solely" responsible; and (4) thus, the jury's determination that Del Morrow was 20 percent comparatively negligent precluded Del Morrow's entitlement to indemnity.

Del Morrow responded, *inter alia*, that the entitlement to common-law indemnity depends on whether the putative indemnitee's fault was "passive" or "secondary," as opposed to the putative indemnitor's "active" or "primary" fault. Del Morrow further asserted that the sort of qualitative assessment of relative responsibility that underlies common-law indemnity is different in kind from the jury's quantitative apportionment of comparative fault. Thus, Del Morrow contended, the jury's prior comparative fault calculus did not, and could not, preclude the trial court from determining that Del Morrow was entitled to indemnity either because its responsibility for the injury to the neighboring property was merely "secondary" while North Santiam's responsibility was "primary," or because its fault was merely "passive" while North Santiam's was "active."

Ultimately the trial court concluded that Del Morrow was entitled to indemnity and awarded damages for Del Morrow's costs of defending and settling neighbors' claims. This appeal ensued.

---

evidentiary bases of the jury's determination of comparative fault. The absence of any record in that regard bears materially on our analysis of whether the jury's apportionment of fault precludes any entitlement to indemnity. *See* 182 Or App at 178-79 & n 5.

On appeal, the parties reprise and refine their arguments.[3] As described below, we agree with Del Morrow that, on this record, the jury's determination of proportionate fault did not preclude an entitlement to common-law indemnity. Consequently, we affirm.

A party asserting an entitlement to common-law indemnity must prove three elements:

> "In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. The last requirement means that, although the claimant must have been legally liable to the injured third party, his liability must have been 'secondary' or his fault merely 'passive,' while that of the defendant must have been 'active' or 'primary.' " *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972) (citations omitted).

In *Piehl v. The Dalles General Hospital*, 280 Or 613, 571 P2d 149 (1977), the court addressed the contours and content of the third, relative responsibility, component of common-law indemnity. After noting that the essential principle of common-law indemnity between joint tortfeasors is the "equitable distribution of responsibility" and that "there can be no all-encompassing rule," *id.* at 620, the court cited with approval the following observations by Prosser:

> "'[I]t is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not. It has been said that it is permitted only where the indemnitor has owed a duty of his own to the indemnitee; that it is based on a "great difference" in the gravity of the fault of the two tortfeasors; or that it rests upon a disproportion or difference in character of the duties owed by the two to the injured plaintiff. Probably none of these is the complete answer, and, as is so often the case in the law of torts, no one explanation can be found which will cover all of

---

[3] In addition, North Santiam raises a new contention that recovery of common-law indemnity in these circumstances would, essentially, circumvent ORS 30.140, which limits indemnity provisions in construction contracts. That contention was not raised before the trial court. *See* 182 Or App at 185 n 8 (addressing preservation).

the cases. Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other. This may be because of the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.' " *Id.* (quoting Prosser, *The Law of Torts*, 313 (4th ed 1971)).

Thus, in general, common-law indemnity is available where, "in justice," either the relationship of the parties or the quality of their respective conduct warrants that one of them should bear the full responsibility for joint liability to an injured third party. *See General Ins. Co. v. P. S. Lord*, 258 Or 332, 336-37, 482 P2d 709 (1971) (noting, for example, that indemnity is appropriate where one party is simply vicariously liable for the negligence of another, but indemnity is inappropriate where the negligence of two tortfeasors without any legal relationship to one another combines to cause injury to a third party).[4] *Accord* ORS 18.440(5) ("This section [governing contribution among joint tortfeasors] does not impair any right of indemnity under existing law.").

■    Here, North Santiam does not dispute that, but for the jury's prior determination of comparative negligence, the evidence adduced at trial would have been sufficient to permit the trial court to award indemnity. In particular, North Santiam acknowledges that the negligence the jury ascribed to Del Morrow could properly be characterized as merely "passive."[5] Nevertheless, North Santiam contends that in

---

[4] The distinction between "active" or "primary" and "passive" or "secondary" negligence is amorphous—and has been fairly described as "somewhat obtuse." *Scott v. Francis*, 100 Or App 392, 399, 786 P2d 1269 (Warren, J., dissenting), *modified on recons* 104 Or App 39, 789 P2d 1111 (1990), *vacated* 311 Or 151, 806 P2d 129, *adopted as modified* 107 Or App 766, 811 P2d 927 (1991), *aff'd* 314 Or 329, 838 P2d 596 (1992). Here, however, we need not explore that distinction in depth because, whatever the difference between those concepts, North Santiam does not dispute that, on this record, the fault that the jury ascribed to Del Morrow could properly be deemed to have been merely "passive." *See* 182 Or App at 178-79 & n 5.

[5] North Santiam does not contend that, given the nature of its cross-allegations of negligence, *see* 182 Or App at 175, the jury must, necessarily, have found that Del Morrow was "actively" or "primary" negligent. Moreover, as noted, North Santiam did not designate the trial transcript as part of the appellate record. Consequently, North Santiam cannot—and does not—argue that the evidence adduced at trial established that Del Morrow was "actively" or "primarily" negligent.

this procedural posture—*viz.*, where the injured third parties had settled before trial and the only remaining claims were between the joint tortfeasors *inter se*—any finding of comparative negligence by the jury precluded indemnity. As support for that proposition, North Santiam invokes *Scott v. Francis*, 314 Or 329, 838 P2d 596 (1992), and *Irwin Yacht Sales, Inc. v. Carver Boat Corp.*, 98 Or App 195, 778 P2d 982 (1989).

Before turning to *Scott* and *Irwin Yacht Sales*, it is useful to place North Santiam's position in a practical context. A hypothetical is illustrative: A and B, a developer and a contractor, work together on a project that causes landslides that, in turn, damage their neighbors' property. The neighbors sue both A and B for negligence, and proceed to trial against both defendants. At trial, the jury returns a special verdict apportioning the fault of the two defendants with respect to the causation of injury to the neighbors' property; that verdict fixes the parties' proportionate fault as 80 percent (A) and 20 percent (B). Later, B brings an indemnity action against A, seeking to recover the amounts it had to pay out to satisfy the neighbors' judgment and its costs of defense, and alleging that it was entitled to indemnity because its fault was only "passive" or "secondary," while A's fault was "active" or "primary." Does the jury's apportionment of comparative fault in the first proceeding preclude B from recovering indemnity in the second proceeding?

The answer—as North Santiam concedes—is "no." *See Irwin Yacht Sales*, 98 Or App at 199. That is, as North Santiam acknowledges, where the litigation proceeds in two steps, with the first stage being an action by a third party against two codefendants, which results in a jury determination of the two defendants' proportionate fault, and the second stage being the prosecution of an indemnity claim by one defendant against the other, the apportionment of fault in the first stage does not preclude the ability to obtain indemnity in the second. *Id.*

North Santiam asserts, nevertheless, that this case is different from the hypothetical because, by the time the

During oral argument on appeal, counsel for North Santiam acknowledged that there was legally sufficient evidence presented at trial from which the trier of fact could have found Del Morrow to be only passively negligent.

jury in this case apportioned the parties' fault, the claims by the third parties (the neighbors) against North Santiam and Del Morrow had dropped out by way of settlement. However, North Santiam does not plausibly dispute that, in deciding Del Morrow's negligence and breach of contract claims against North Santiam, and in apportioning fault with respect to those claims, the jury in this case performed exactly the same function and resolved the same questions that it would have resolved if the neighbors were still in the case—*viz.*, deciding North Santiam's and Del Morrow's proportionate fault with respect to causation of injury to neighbors' property. Thus, while conceding that the jury's determination of proportionate fault would not preclude indemnity in the hypothetical, North Santiam contends that the same determination precludes indemnity in this case. North Santiam does not seriously dispute that that result is, at least practically, incongruous. Nevertheless, North Santiam contends that *Scott* and *Irwin Yacht Sales* compel that result as a matter of law. We disagree.

In *Scott*, two lawyers, Lopez and Jackson, represented a common client in a medical malpractice action. During the course of that representation, Lopez told Jackson that there was no time pressure for filing the claim, and Jackson relied upon that representation. As a result, the client's claim was not timely filed, and the client sued both attorneys for malpractice. Before trial, the plaintiff settled her claim for $65,000, with Lopez paying $50,000 and Jackson paying $15,000. Jackson then sought indemnity, arguing, variously, that his fault was merely "passive" while Lopez's was "active" or that Lopez's responsibility was "primary," while his was merely "secondary." The trial court granted Lopez's motion for a directed verdict, concluding that the evidence was legally insufficient to support recovery of indemnity under either the "primary"/"secondary" or "active"/"passive" theories of recovery.[6]

On appeal, we reversed in part. We concluded that the trial court properly determined that Jackson could not recover common-law indemnity under the "active"/"passive"

---

[6] The trial court also rejected Jackson's claim for contractual indemnity. The disposition of that claim on appeal is not pertinent to our discussion here.

fault formulation: "Because the nature of the two lawyers' negligence [*viz.*, failing to timely file the complaint] was the same, one cannot be said to have been active and the other passive." *Scott*, 100 Or App at 397. However, we further concluded that there was evidence from which the jury could have concluded that Jackson was entitled to recovery indemnity under the "primary"/"secondary" responsibility formulation:

> "Although we confess some uncertainty as to the application or breadth of the primary versus secondary responsibility test, the court appears to have stated it more generally as 'the equitable distribution of responsibility.' *Piehl v. The Dalles General Hospital * * *.* The dissent states that indemnity is not permitted unless the parties' liability to the injured party is 'qualitatively different.' 100 Or App at 399 [Warren, J., dissenting]. Although that simple rule would be easier to apply, the Oregon cases do not appear to bear it out. It not only ignores the primary-secondary responsibility analysis * * *, it ignores the statement of the rule in *Fulton Ins. v. White Motor Corp.,* * * * and its expression in *Piehl,* and also what the court said in *General Ins. Co. v. P. S. Lord.*
>
> "* * * * *
>
> "Here, as between Jackson and [the plaintiff client], Lopez admitted that getting the complaint filed within the time permitted was *solely* his responsibility. Given that evidence, a jury could reasonably find that, even though both attorneys were negligent as to [the client] and that the nature of their negligence was the same, Lopez, as between the two attorneys, had assumed full responsibility for getting the complaint timely filed. Accordingly, a jury could reasonably find that Lopez was primarily responsible for [the client's] damage, that Jackson was secondarily responsible for it[,] and that an equitable distribution of responsibility requires that all of the damage to [the client] should be borne by Lopez." 100 Or App at 397-98 (citations omitted; emphasis in original).

The Supreme Court affirmed our analysis and holding:

> "A jury could find that Jackson's failure to timely file stemmed solely from his reliance on Lopez's misrepresentation that there was no time pressure for filing the claim. A

person who is induced to act as a result of another's misrepresentation, and thereby becomes liable to a third person, is not necessarily in equal fault with the person who made the misrepresentation. Joint liability does not necessarily mean equal fault. Although Jackson and Lopez were *liable* to plaintiff, a jury could find that Lopez, as a result of his misrepresentation, was primarily *responsible* for the tort and should therefore indemnify Jackson." 314 Or at 334 (emphasis in original).

North Santiam seizes on our observation that Lopez had admitted that the timely filing of the complaint was *"solely* his responsibility" and the Supreme Court's parallel observation that "Jackson's failure timely to file stemmed solely from his reliance on Lopez's misrepresentation." North Santiam contends that those references signify that, where the only issue is the fault of the putative indemnitee and putative indemnitor "in relation to each other," and not "with respect to a third party," there can be no recovery of indemnity unless the putative indemnitor was "solely" at fault as between the parties *inter se.* By extension, North Santiam reasons that, because the only two parties remaining before the jury at the time it rendered its apportionment finding were North Santiam and Del Morrow, the jury's determination in that regard was necessarily one of the parties' fault *inter se*—and, because the jury did not determine North Santiam to be "solely" at fault, Del Morrow cannot recover indemnity.

*Scott* does not bear that construction. Nothing in *Scott* purports to equate "primary" responsibility with "sole" responsibility. Rather, our opinion, and the Supreme Court's affirmance, emphasized the broadly equitable underpinnings of common-law indemnity as expressed, variously, in *Piehl* and *Fulton Ins.* Thus, the fact that we and the Supreme Court pointed to Lopez's explicit assumption of sole responsibility for the filing of the complaint as evidence permitting the recovery of indemnity under the "primary"/"secondary" responsibility formulation does not mean that the putative indemnitor's "sole" responsibility is the *sine qua non* for such a recovery.

Further, even if *Scott* could somehow be read as so conditioning any entitlement to indemnity under the

"primary"/"secondary" responsibility formulation, nothing in *Scott* so limits recovery of indemnity under the "active"/"passive" fault formulation. As noted, in *Scott*, we concluded that there could be no recovery under the "active"/"passive" formulation because "the nature of the two lawyers' negligence was the same." 100 Or App at 397. Here, in contrast, North Santiam does not—and cannot plausibly—contend that the nature of the parties' negligence that resulted in the damage to the neighboring property "was the same."[7] Indeed, as noted, North Santiam does not dispute that Del Morrow adduced legally sufficient proof that its fault was merely "passive," while North Santiam was "actively" at fault. *See* 182 Or App at 178-79 n 5. Thus, whatever *Scott*'s implications for recovery of indemnity under the "primary"/"secondary" responsibility formulation, the jury's imputation of some comparative fault to Del Morrow did not preclude Del Morrow's ability to recover indemnity under the alternative "active"/"passive" fault formulation.

North Santiam's reliance on *Irwin Yacht Sales* is similarly misplaced. Indeed, *Irwin Yacht Sales* confirms the propriety of the trial court's award of indemnity in this case. In *Irwin Yacht Sales*, the plaintiff, a retailer, had sold a consumer a boat designed and manufactured by the defendant. The consumer was injured when an exhaust hose connection on the boat's engine failed. The consumer sued the retailer and the manufacturer, alleging theories of negligence and strict liability. Ultimately, the jury in that action returned a special verdict awarding the consumer damages and fixing the parties' proportionate "fault" as consumer (15 percent), retailer (40 percent), and manufacturer (45 percent). That verdict did not specify whether the defendants' liability was based on negligence or strict liability.

Thereafter, the retailer filed an action seeking indemnity from the manufacturer. The trial court dismissed the retailer's indemnity claim, "holding that the prior action had decided the relative liability of the two parties." *Irwin*

---

[7] As framed by the parties' pleadings, North Santiam actually performed the construction activities that resulted in the landslides. Conversely, North Santiam's allegations of comparative negligence assert that Del Morrow negligently failed to disclose or provide information to North Santiam and negligently directed North Santiam to perform the excavation activities.

*Yacht Sales*, 98 Or App at 197. We reversed. In so holding, we first noted that the jury's apportionment of fault in the prior action

> "did not determine whether plaintiff's [the retailer's] fault was active or passive. That issue was not presented to the jury. A finding that plaintiff was to some degree at fault is not fatal to plaintiff's indemnity claim here; it is, in fact, necessary to it, because the indemnitee is not entitled to indemnity unless it is liable to the injured third party." *Id.* at 198.

We further rejected the defendant manufacturer's argument that the jury's allegation of fault in the prior action was, necessarily, a determination that the retailer had been "actively" negligent. We noted that, from the jury's special interrogatory responses in the prior action, it was impossible to determine whether the jury's determination of "fault" was based on negligence or on strict liability and, thus, "even if a jury's finding of negligence precludes an indemnity claim, the jury's verdict here would not do so, because it does not tell us the basis of recovery." *Id.* at 199.

Finally, we emphasized, that, in all events, a mere unadorned prior determination of "negligence" could not, without more, preclude recovery of indemnity:

> "In any case, a party *may* be indemnified for liability arising from its own passive negligence * * *. Therefore, even if the jury here had found plaintiff to be negligent for failing to inspect the boat, that would not bar the claim for indemnity. The question would remain whether plaintiff's negligence was passive and defendant's was active, in relation to each other. Because that issue has not yet been litigated, plaintiff has pleaded sufficient facts to state a claim for indemnity." *Id.* at 199 (emphasis in original).

*Irwin Yacht Sales* is closely analogous to this case. Here, as in *Irwin Yacht Sales*, there was a prior jury apportionment of fault with respect to liability for jointly caused injury to a third party. Here, as in that case, the jury was not asked to determine questions of "active" versus "passive" fault or "primary" versus "secondary" responsibility—indeed, before the case was submitted to the jury, the parties stipulated that the court would decide the indemnity claim. Here,

as in *Irwin Yacht Sales*, the nature of the parties' pleading and proof is not such that the jury's determination that the putative indemnitee was comparatively negligent necessarily connotes a finding of "active" or "primary" negligence. Thus, here, as in that case, the defendant indemnitor cannot show that the jury's previous verdict necessarily rested on a finding of fact that would preclude recovery of indemnity.

In sum, neither *Irwin Yacht Sales* nor *Scott* supports North Santiam's position. We thus conclude that the jury's prior allocation of comparative fault was not preclusive and, consequently, that the trial court did not err in rendering judgment in favor of Del Morrow on its claim for common-law indemnity.[8]

Affirmed.

---

[8] In so holding, we reject, as unpreserved, North Santiam's argument that a recovery of indemnity in those circumstances cannot be reconciled with ORS 30.140. That statute provides, in part:

"[A]ny provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void."

On the available record, there is no indication that North Santiam ever mentioned that statute at trial, much less that North Santiam ever raised and preserved any issue as to that statute's possible interplay with recovery of common-law indemnity. We note, parenthetically, that ORS 30.140, by its terms, applies to "provisions" in written construction agreements. Here, there appears to have been no written indemnification provision, and Del Morrow made no claim for contractual indemnity.