**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

AMERICAN ROLL-ON ROLL-OFF
CARRIER, LLC; AMERICAN AUTO
LOGISTICS, INCORPORATED; WALLENIUS
WILHELMSEN LINES AMERICAS, LLC,
　　　　　*Plaintiffs-Appellants,*

v.

P&O PORTS BALTIMORE,
INCORPORATED,
　　　　　*Defendant-Appellee,*

and

I.T.O. CORPORATION OF BALTIMORE, a
wholly owned subsidiary of P&O
PORTS NORTH AMERICA INC.,
　　　　　*Defendant.*

No. 06-1058

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(CA-03-3462-WDQ)

Argued: October 24, 2006

Decided: February 26, 2007

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Traxler wrote
the opinion, in which Judge Niemeyer and Judge Motz joined.

**COUNSEL**

**ARGUED:** Chester D. Hooper, HOLLAND & KNIGHT, L.L.P., New York, New York, for Appellants. JoAnne Zawitoski, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee. **ON BRIEF:** James H. Power, HOLLAND & KNIGHT, L.L.P., New York, New York, for Appellants. Alexander M. Giles, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

American Roll-On Roll-Off Carrier ("ARC") filed suit against P&O Ports Baltimore, Inc. ("P&O"), a stevedoring company, after a piece of equipment loaded on an ARC-operated ship broke free of its lashings and damaged the ship and other cargo.[1] ARC's complaint included a claim alleging negligence on the part of P&O and a claim seeking indemnification for the amounts ARC paid to the owners of the damaged cargo. The district court granted summary judgment in favor of P&O, concluding that a one-year statute of limitations period that would have applied to a suit by the cargo interests against ARC also barred ARC's action against P&O. ARC appeals, and we reverse and remand for further proceedings.

---

[1]ARC is a wholly-owned subsidiary of Wallenius Lines AB, a Swedish shipping company. Two other Wallenius subsidiaries, Wallenius Wilhelmsen Lines Americas, LLC ("WWL"), and American Auto Logistics, Inc. ("AAL"), were involved in various aspects of the commercial transactions that ultimately gave rise to this case. Plaintiffs WWL and AAL have assigned their rights against P&O to ARC, and ARC is proceeding as a plaintiff in its own right and as assignee of WWL and AAL. Unless there is a reason to distinguish between the individual companies, this opinion will refer to the carrier as "ARC."

## I.

## A.

The Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C.A. app. § 1300 - 1315 (West 1975 & Supp. 2006), governs "every bill of lading . . . which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C.A. app. § 1300. COGSA limits a carrier's liability for damage to cargo to $500 per package (or customary freight unit) "unless the nature and value of [the cargo has] been declared by the shipper before shipment and inserted in the bill of lading," *id.* app. § 1304(5), and establishes a one-year statute of limitation for the filing of actions seeking recovery for lost or damaged cargo, *see id.* § 1303(6)(c). While these COGSA defenses protect the carrier, not its agents, the benefits of the statute can be extended to stevedores or other agents of the carrier if the bill of lading so provides. A clause extending COGSA defenses to a carrier's agent is called a "Himalaya clause."[2]

Since 1997, P&O (and its predecessor in interest I.T.O. Corporation of Baltimore, Inc.) has provided stevedoring services to ARC vessels calling at the Port of Baltimore. The stevedoring contract between ARC and P&O requires all bills of lading issued by ARC to include a Himalaya clause, and the agreement further provides that P&O is entitled to all defenses available to the carrier under the bill of lading against claims for cargo damage brought by the shipper, consignee, or cargo owner. The agreement states that if in a contract with a customer ARC chooses to waive its right to limit liability, ARC must give prior notice to P&O. If ARC waives its liability limit without prior notice, ARC must indemnify P&O for any damages assessed against P&O that exceed the liability cap that otherwise would have applied under the bill of lading.

---

[2]"The term Himalaya Clause is derived from the case of *Adler v. Dickson*, [1955] 1 Q.B. 158 (C.A.), involving the vessel *Himalaya*, and is used to describe contractual provisions that extend maritime liability limitations." *American Home Assurance Co. v. Hapag Lloyd Container Linie, GMBH*, 446 F.3d 313, 317 n.2 (2d Cir. 2006).

B.

Plaintiff AAL had a long-standing contract with the United States government's Military Traffic Management Command ("MTMC") to transport the privately-owned vehicles ("POVs") of government employees to foreign destinations. During the period relevant to this case, MTMC was AAL's only customer, and MTMC was also ARC's largest customer.

In February 2000, ARC entered into a service agreement with MTMC under which it agreed to transport POVs and other military cargo overseas. Under the contract, ARC waived COGSA's one-year limitation period for the filing of actions seeking recovery for damaged cargo, and ARC waived COGSA's $500 per package liability limitation, ultimately agreeing to a liability cap of $20,000 per POV.[3] ARC did not give P&O prior notice of these waivers.

Pursuant to the contracts previously entered into with MTMC, ARC in October 2000 prepared to transport on the M/V FAUST 166 POVs and other military cargo from the United States to various overseas military bases. The cargo included a 25-ton aircraft tow tractor, which P&O loaded and stowed "athwartships" — across the width of the ship. The POVs were loaded on decks below the tow tractor.

About a week after the M/V FAUST left Baltimore, the ship encountered very rough seas. The ship rolled 32 degrees, and the tow tractor broke free of its lashings. The tractor rolled across the deck and punctured one of the ship's fuel tanks. Ten to fifteen tons of marine diesel fuel spilled onto the deck and eventually leaked down into the lower decks and onto the 166 POVs.

---

[3]The contract between AAL and MTMC capped the shipper's liability at $20,000 per POV. Although the contract between ARC and MTMC set a lower liability cap, AAL and ARC entered into a separate contract under which ARC agreed that should any need arise to settle a claim involving a damaged POV, ARC would resolve the claim without regard to the liability cap established in its contract, and AAL would assume responsibility for payment of the claim.

An initial examination of the POVs indicated that all but five of them were contaminated to some degree by the diesel fuel, and more than one hundred were severely contaminated. Because diesel fuel causes rubber and plastic to degrade, the diesel contamination of the POVs could eventually cause brakes and other systems to fail. ARC had concerns about the long-term safety of the cars after the contamination, and ARC did not want to release the cars to the individual service members. In December 2000, ARC and MTMC met to discuss the incident. They entered into a settlement agreement whereby ARC agreed that all 166 POVs were totaled, and ARC agreed to waive the $20,000 liability cap established by AAL-MTMC contracts. ARC agreed to pay the owners of the POVs the full "blue book" value for each car, plus any additional amount necessary to satisfy any lien on the car, plus the cost of a rental car. ARC took title to the cars, sent them back to the United States, and had them destroyed. According to its complaint, ARC ultimately paid approximately $2,700,000 to settle the claims of the POV owners. ARC did not notify P&O of the settlement.

On December 5, 2003 (more than three years after the POVs were damaged), ARC, through its insurance carrier, brought this action against P&O. ARC asserted a negligence claim, alleging that its vessel was damaged because of P&O's negligence in stowing the tow tractor. ARC also asserted a claim for contractual indemnification, seeking recovery of the amounts paid in settlement of the POV owners' claims.

P&O moved for summary judgment. P&O contended that because ARC obtained title to the POVs after it settled the claims of the POV owner, ARC was the cargo owner. Because the bill of lading required the cargo owner to commence a claim for cargo damage within a year after the cargo was delivered, P&O argued that ARC's negligence claim was time barred under the terms of the bill of lading. P&O also contended that ARC's indemnification claim was barred by the one-year limitations period. The bill of lading issued by ARC gave P&O the benefit of all defenses available to ARC in an action by the cargo owner. When ARC commenced this action, the one-year limitation period on cargo claims had run, and P&O argued that ARC's indemnification claim was subject to the same limitations defense that could be raised against a cargo damage claim.

The district court granted summary judgment in favor of P&O, concluding that both the negligence claim and the indemnification claim were barred by the one-year limitation period contained in the bill of lading issued by ARC to MTMC. This appeal followed.

At oral argument, ARC expressly abandoned its negligence claim. We therefore consider only the question of whether ARC's indemnity claim was timely filed.

## II.

It is well established that a maritime claim for indemnity "does not accrue until the indemnitee's liability is fixed by a judgment against or payment by the indemnitee." *United New York Sandy Hook Pilots Ass'n v. Rodermond Indus., Inc.*, 394 F.2d 65, 75 (3d Cir. 1968); *accord Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 733 (5th Cir. 1983) (en banc); *Federal Commerce & Navigation Co. v. Calumet Harbor Terminals, Inc.*, 542 F.2d 437, 441 (7th Cir. 1976). ARC's claim for indemnification thus accrued on December 21, 2000, when it paid the first of the claims of the POV owners. This action was commenced on December 5, 2003, within the three-year limitation period established under the stevedoring agreement with P&O.[4]

Because its indemnification claim was filed within the period required under the terms of the stevedoring agreement, ARC contends that the district court erred by applying the one-year limitation period contained in the bill of lading. ARC contends that the bill of lading governs the relationship between it and the POV owners, but does not govern the relationship between it and P&O. That relationship is governed by the stevedoring agreement, and the indemnification claim was timely under the law that the parties selected to govern that contract.

---

[4]The stevedoring agreement states that it is to be governed by Maryland law. Under Maryland law, an indemnification claim accrues "when the would-be indemnitee pays the judgment arising from the underlying transaction." *Hanscome v. Perry*, 542 A.2d 421, 425 (Md. Ct. Spec. App. 1988). Contractual indemnification claims must be commenced within three years after the cause of action accrues. *See* Md. Code Ann. Cts. & Jud. Proc. § 5-101 (2002); *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1103 & n.5 (Md. 1999).

P&O does not contend that ARC's claim was untimely under the general rules governing indemnification claims. Instead, P&O contends that the stevedoring agreement incorporated the bill of lading's one-year limitation period and that ARC's indemnification claim was therefore untimely.

In support of this argument, P&O points to section 7(d) of the stevedoring agreement. Section 7(d) obligates ARC and its related corporate entities to include a Himalaya clause in their bills of lading and to state in the bill of lading that P&O will not be liable to the shipper or cargo owner. Section 7(d) goes on to state that

> without prejudice to the generality of the foregoing provisions . . . , every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to [ARC], or to which [ARC] is entitled under the terms of [its] Bill of Lading shall also be available and shall extend to protect [P&O] acting [in the course of its employment under the stevedoring agreement].

J.A. 118. P&O argues that, by virtue of the Himalaya clause in the bill of lading, it already receives the benefit of all COGSA defenses available to the carrier. For the portion of section 7(d) quoted above to have independent meaning, P&O contends that the quoted language must do something other than restate that P&O is entitled to all defenses available to ARC with regard to a claim for cargo damage. According to P&O, the quoted language effectively transforms the one-year limitation period set forth in the bill of lading for claims by cargo interests into a limitation period governing indemnification claims by the carrier.

We agree with P&O that maritime contracts, like other contracts, should be interpreted as so to give effect to each provision of the contract. *See, e.g.*, *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004) ("A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."). We do not agree, however, that the language of section 7(d) is mere surplusage unless we accept the meaning urged by P&O.

The bill of lading is a contract between the carrier and the shipper, and the Himalaya clause is the vehicle through which the carrier's COGSA defenses to cargo claims are extended to the stevedore. Thus, if a cargo owner sues the stevedore for cargo damage, the stevedore will be entitled to raise COGSA defenses that without the Himalaya clause would not be available to it. The stevedoring contract, however, is a contract between the stevedore and the carrier. The section 7(d) language quoted above allows the stevedore to raise in an indemnification action by the carrier any defenses to the underlying transaction that could have been asserted by the carrier. If, for example, ARC were to have paid an untimely cargo damage claim (that is, a claim that was brought beyond the one-year period established in the bill of lading) and then sought indemnification from P&O, the section 7(d) language would permit P&O to assert the bill of lading's time bar as a defense to the indemnification claim.

The Himalaya clause and the section 7(d) language thus serve related but nonetheless separate purposes: The Himalaya clause provides the stevedore with defenses to a *cargo damage claim* asserted by *cargo interests*, while the section 7(d) language provides the stevedore with defenses to an *indemnification claim* asserted by *the carrier*. Accordingly, P&O's contention that the section 7(d) language would be mere surplusage unless we accept its understanding of the language is without merit.

Moreover, the section 7(d) language simply cannot support the construction urged by P&O. As noted above, that portion of the stevedoring agreement gives P&O the benefit of the defenses available to the carrier under the bill of lading. Because the bill of lading governs the relationship between a carrier and a shipper or cargo owner, the one-year time bar under the bill of lading applies to claims that arise in the context of that relationship—claims for cargo loss or damage. We find no language in section 7(d) that can be understood to somehow convert a limitation on the cargo owner's right to file a cargo damage claim into a limitation on a carrier's right to file an indemnity claim. Instead, the language simply gives P&O the right to assert against ARC any defense that ARC could have asserted against the cargo owners in the underlying transaction. Because the POV owners made their claims and ARC paid those claims well within the time frame established by the bill of lading, the bill of lading's one-year

limitation period poses no obstacle to ARC's indemnity claim against P&O.

P&O, however, also argues that ARC's action is time-barred under the analysis accepted by the district court when granting summary judgment in favor of P&O. P&O contends that ARC became the cargo owner when it obtained title to the POVs. The bill of lading governs claims for cargo damage asserted by the shipper or cargo owner, and it requires all such claims to be brought within a year. The Himalaya clause, of course, gives P&O the right to assert such defenses against claims by cargo owners, and P&O thus argues that ARC's claim is time-barred, because ARC is now the cargo owner. We disagree.

We will assume for purposes of this opinion that, by taking title to the POVs for the purpose of destroying them, ARC is now a cargo owner within the meaning of the bill of lading. ARC, however, is not suing P&O in its capacity as cargo owner. That is, ARC is not asserting against P&O a negligence-based claim seeking recovery for damage to the cargo. Instead, ARC, in its capacity as the carrier, is pursuing an indemnification claim. It seeks to recover from P&O the amount it paid to satisfy the claims of the owners of the POVs that were damaged as a result of what ARC claims was negligence on the part of P&O. Such an indemnification claim, of course, is expressly authorized by the stevedoring agreement, and, as discussed above, was timely filed by ARC. Because ARC is not asserting a claim for damage to the cargo, we fail to see how ARC's acquisition of the POVs as part of the settlement of the damage claims can somehow deprive ARC as the carrier of its contractual right to seek indemnity.

Accordingly, we conclude that ARC's post-settlement status as cargo owner does not affect ARC's right to seek indemnity from P&O for the amount that ARC paid to satisfy the claims of the POV owners. Because this is an indemnity action, the bill of lading's one-year limitations period for the commencement of cargo-damage claims is inapplicable. ARC's indemnification claim was timely filed, and the district court therefore erred by dismissing the claim.

III.

We briefly address one final matter. P&O contends that if we find ARC's claim to be timely filed, we should rule on an issue not

addressed by the district court—whether ARC's recovery must be limited to $500 per POV, as provided for in the bill of lading and the stevedoring agreement.

As noted above, ARC in its service agreement with MTMC waived COGSA's $500 per package liability limitation. ARC failed to give P&O prior notice of this waiver, as required by the stevedoring agreement, and ARC ultimately settled the claims of the POV owners by paying sums greatly in excess of $500 per POV. P&O contends that it cannot be required to indemnify ARC for the full amount that ARC voluntarily paid in order to keep its biggest customer happy, and that under the terms of the bill of lading and stevedoring agreement, P&O's liabilty on ARC's indemnity claim must be limited to $500 per POV. For its part, ARC contends that the settlement was reasonable because it foreclosed the possibility that the damaged POVs would be returned to the roads, where they could perhaps cause injury to a third party who would then seek compensation from ARC. ARC also contends that if the COGSA liablity cap is applicable, then its recovery would be capped at $500 per measurement ton of cargo rather than $500 per POV.

We decline to consider these issues at this juncture. The district court addressed only the question of the timeliness of ARC's complaint. Concluding that the action was not timely filed, the court entered judgment in favor of P&O. P&O did not file a cross-appeal. While we may affirm a district court's decision for any reason appearing in the record, accepting P&O's arguments on these points would require us to modify the district court's judgment, an action that cannot be taken in the absence of a cross-appeal. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999) ("Absent a cross-appeal, an appellee may urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court, but may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." (internal quotation marks omitted)); *JH v. Henrico County Sch. Bd.*, 326 F.3d 560, 567 n.5 (4th Cir. 2003) ("The general rule is that without taking a cross-appeal, the prevailing party may present any argument that supports the judgment in its favor as long as the acceptance of the argument would not lead to a

reversal or modification of the judgment rather than an affirmance." (internal quotation marks and alteration omitted)).

This circuit views the cross-appeal requirement as one of practice, rather than as a strict jurisdictional requirement. *See Tug Raven v. Trexler*, 419 F.2d 536, 548 (4th Cir. 1969). *But see, e.g.*, *Rollins v. Metropolitan Life Ins. Co.*, 912 F.2d 911, 917 (7th Cir. 1990) (concluding that the cross-appeal requirement is jurisdictional). Nevertheless, we see no reason in this case to make an exception to the cross-appeal requirement, as we believe it is proper for the district court to consider these questions in the first instance on remand.

## IV.

For the reasons discussed above, we conclude that ARC's indemnification claim was timely filed, and the district court therefore erred by granting summary judgment in favor of P&O. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

*REVERSED AND REMANDED*